FILED
COURT OF APPEALS
DIVISION II

2013 MAY 14 AM 9: 01

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re Welfare of: | No. 44044-0-II |
| | consolidated with |
| J.M.G. and R.M.G. | No. 44050-4-II |
| Minor Children. | |
| | UNPUBLISHED OPINION |

PENOYAR, J. — The juvenile court terminated MG's rights to her daughters JMG and RMG. She appeals, arguing that the Department of Social and Health Services (the Department) failed to present sufficient evidence to support the juvenile court's finding that the continuation of her relationship with RMG clearly diminished RMG's chances of integration into a stable and permanent home because RMG's father's parental rights are still intact. MG also contends that the termination statutes violated her right to substantive due process. A commissioner of this court initially considered MG's appeal on an accelerated basis under RAP 18.13A and then referred it to a panel of judges. Concluding that the termination statutes are constitutional, but that the juvenile court erred in terminating MG's parental rights as to RMG, we affirm the order of termination as to JMG but reverse the order of termination as to RMG.

## FACTS

MG is the mother of JMG, a girl born August 3, 2009, and RMG, a girl born September 15, 2005. WG, who died December 1, 2009, is listed as the father on both children's birth certificates. When WG became ill, MG put his name on RMG's birth certificate and after his death, RMG received social security survivor benefits. In March 2012, GA came forward as the biological father of RMG and his paternity was later confirmed.

JMG and RMG came to the Department's attention in April 2010 when it was discovered that MG was using methamphetamines and was in a relationship with a man she knew to be a registered sex offender. The Department took the children into protective custody and they were eventually placed in foster care.

The court entered agreed orders of dependency as to MG on June 21, 2010. She agreed that the children were dependent pursuant to RCW 13.34.030(6)(c) in that they had "no parent, guardian, or custodian capable of adequately caring" for them, such they are "in circumstances which constitute a danger of substantial damage to [their] psychological or physical development." Ex. 1. Under the dependency dispositional order, MG completed a psychological evaluation and parenting assessment, out-patient treatment, parenting classes, parent-child interactive therapy, and engaged in mental health treatment and counseling. In February 2011, the children were placed back into MG's care in an in-home dependency. RP at 14.

In June 2011, the Department became aware that a man named Murray Ellison had stayed the night in MG's home. Ellison had admitted to having sexually abused his own children. MG told the Department social worker that she would no longer see him. The Department social worker scheduled a family team decision meeting to discuss the children's placement. MG failed to attend the meeting. The Department social worker and guardian ad litem then went to MG's home to see if she was there, but the house was unoccupied. Fearful that the children would again be removed from her care, MG left the state with them, first fleeing to Arizona and then Florida. The Department was unaware of MG's and the girls' whereabouts until February 2012, when MG was arrested in Florida. Her location came a month after MG e-mailed the children's guardian ad litem in Washington to inform her that Ellison was grooming RMG to be his victim.

2

Law enforcement brought MG back to Washington on March 15, 2012. When the children returned to Washington State, the juvenile court entered an order returning them to foster care. MG was subsequently convicted of custodial interference and imprisoned until May 29, 2012. Both the superior court in the criminal case and the juvenile court in the dependency ordered that MG not have contact with the girls. MG has not had contact with the children since her arrest. The children exhibited behavioral issues upon their return from Florida, requiring them to attend counseling.

The Department petitioned for termination of parental rights on March 13, 2012. At the time of the termination trial, the Department had filed a dependency petition as to RMG's father, GA, but a dependency had not been established.

The children's therapist testified that allowing contact with MG would be detrimental in their efforts towards stabilization, and that the children need "predictability and permanency." The children's guardian ad litem recommended that MG's parental rights be terminated.

MG argues that because GA still has parental rights as to RMG, the Department failed to prove that continuation of MG's parental rights diminished the prospects for RMG's early integration into a stable and permanent home. The juvenile court entered an order terminating the parental rights of MG to JMG and RMG.[1]

---

[1] The finding of fact relating to the element in RCW 13.34.180(1)(f) reads:
> Continuance of the parent-child relationship clearly diminishes the children's prospects for integration into a stable and permanent home. Continuing the parent child relationship only results in the children remaining in limbo, which severely limits their prospects for permanent placement. The children need extensive, lengthy therapy to heal from the trauma they have experienced while in their mother's care. The mother has proven that she simply is not capable of caring for them and cannot provide them with a permanent and stable home which they so desperately need.

Clerk's Papers (CP) at 44.

3

## ANALYSIS

### I. SUFFICIENCY OF THE EVIDENCE

The juvenile court may order termination of a parent's rights as to his or her child if the Department establishes the six elements in RCW 13.34.180(1)(a) through (f) by clear, cogent, and convincing evidence. The Department must also prove by a preponderance of the evidence that termination of parental rights is in the child's best interests. RCW 13.34.190(1)(b). Clear, cogent and convincing evidence exists when the ultimate fact at issue is shown to be "highly probable." *In re Welfare of Sego*, 82 Wn.2d 736, 739, 513 P.2d 831 (1973) (quoting *Supove v. Densmoor*, 225 Or. 365, 372, 358 P.2d 510 (1961)).

In termination proceedings, the juvenile court has the advantage of having the witnesses before it, and therefore we accord deference to the juvenile court's decision. *In re Welfare of Aschauer*, 93 Wn.2d 689, 695, 611 P.2d 1245 (1980). We limit our analysis to whether substantial evidence supports the juvenile court's findings. *Sego*, 82 Wn.2d at 739. Substantial evidence is evidence sufficient to persuade a fair-minded rational person of the truth of the declared premise. *Bering v. SHARE*, 106 Wn.2d 212, 220, 721 P.2d 918 (1986), *cert. dismissed*, 479 U.S. 1050 (1987). We do not make credibility determinations or weigh evidence. *Sego*, 82 Wn.2d at 739-40.

MG argues that the Department failed to prove by clear, cogent and convincing evidence that "continuation of the parent and child relationship clearly diminish[ed] [RMG's] prospects for early integration into a stable and permanent home," as RCW 13.34.180(1)(f) requires. She contends that because RMG's father's rights are still intact, termination of her parental rights is not necessary because RMG may attain permanency in her father's home. Relying on the

4

therapist's testimony, the Department responds that the mere existence of an ongoing legal relationship with MG will thwart RMG's efforts towards permanence.

The Department must prove that "continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home." RCW 13.34.180(1)(f). Recently our supreme court held that no longer would proof of the element in RCW 13.34.180(1)(e)[2] serve as proof of the element in RCW 13.34.180(1)(f). *In re Dependency of K.D.S.*, ___ Wn.2d ___, 294 P.3d 695, 701 (2013). Accordingly, we must examine whether the Department set forth sufficient evidence to satisfy the requirements in RCW 13.34.180(1)(f), even though MG does not challenge the juvenile court's finding as to RCW 13.34.180(1)(e).

RCW 13.34.180(1)(f) is chiefly concerned "with the continued effect of the *legal* relationship between parent and child, as an obstacle to adoption; it is especially a concern where children have potential adoption resources." *In re Dependency of A.C.*, 123 Wn. App. 244, 250, 98 P.3d 89 (2004). Less relevant is the quality of the parent-child relationship. *A.C.*, 123 Wn. App. at 250. The Department need not prove the existence of a potential adoptive home for the child in order to prove the element in RCW 13.34.180(1)(f): "the parent-child relationship and whether it impedes the child's prospects for integration" is more significant to application of this factor than "what constitutes a stable and permanent home." *In re Dependency of K.S.C.*, 137 Wn.2d 918, 927, 976 P.2d 113 (1999).

Where the continuation of the parent-child relationship does not interfere with the child's integration into a permanent home because termination of parental rights would have no impact on a child's living arrangement, RCW 13.34.180(1)(f) has not been proved. *See In re the*

---

[2] RCW 13.34.180(1)(e) requires proof "[t]hat there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future."

*Welfare of S.V.B.*, 75 Wn. App. 762, 775, 880 P.2d 80 (1994). In *S.V.B.*, we held that it was error to terminate the father's parental rights where his child was living with the paternal grandmother pursuant to a court-established guardianship, and that arrangement would not change if the father were to lose his parental rights. 75 Wn. App. at 775. This court observed that termination of a parent's rights despite the availability of a permanent home elsewhere, "deprive[s] [the child] of the benefits of a parent—the potential for nurturing support and the financial support that the law would otherwise obligate [the parent] to provide." *S.V.B.*, 75 Wn. App. at 775.

Here, the Department became aware in March 2012 that GA was RMG's father. The Department filed a dependency petition as to him, yet proceeded to the termination trial in MG's case before a dependency was established in GA's case. Thus, at the time of the termination trial, the legal rights of GA to RMG were still intact. Like the child in *S.V.B.*, who could continue living with his grandmother despite the continuation of his father's parental rights, the existence of the legal relationship between RMG and MG will not prevent RMG from achieving permanency in GA's home. *See S.V.B.*, 75 Wn. App. at 775.

We are not persuaded by the Department's argument that the therapist's recommendation against contact with MG is sufficient to satisfy the element in RCW 13.34.180(1)(f). First, a no-contact order remains in effect barring MG from communicating with RMG. Ex. 11 at 10. Mechanisms other than terminating MG's parental rights exist to prevent her from having contact with RMG. *See* RCW 26.10.040(1)(e) (parenting plan may contain restraining order). Second, there was no evidence to support the notion that continuation of the legal parent-child relationship caused RMG harm once MG was ordered to have no contact with her. *Cf. In re Dependency of Esgate*, 99 Wn.2d 210, 214-25, 660 P.2d 758 (1983) (former RCW 13.34.180(6)

6

proved where "the State established that continuation of the parent/child relationship often created feelings of insecurity and instability in the child").

The juvenile court's finding as to RCW 13.34.180(1)(f) is unsupported by the evidence because MG's parental rights to RMG do not diminish RMG's prospects for early integration into a stable and permanent home so long as GA has parental rights as to her. Accordingly, we reverse the termination order as to RMG. Because MG's sufficiency argument only relates to RMG, leaving undisturbed the termination order as it pertains to JMG, we address MG's second argument.

II.    SUBSTANTIVE DUE PROCESS

MG contends that the termination statutes, RCW 13.34.180 and RCW 13.34.190, violate her right to substantive due process because their creation of an all or nothing definition of the parent-child relationship means they are not narrowly tailored. All three divisions of this court have already found the termination statutes are constitutional even though they do not permit the juvenile court to consider less restrictive alternatives to termination. *In re the Welfare of M.R.H.*, 145 Wn. App. 10, 30, 188 P.3d 510 (2008), *cert. denied*, 129 S. Ct. 1682 (2009); *In re Dependency of T.C.C.B.*, 138 Wn. App. 791, 798-99, 158 P.3d 1251 (2007); *In re the Welfare of C.B.*, 134 Wn. App. 336, 345, 139 P.3d 1119 (2006); *In re Dependency of I.J.S.*, 128 Wn. App. 108, 120, 114 P.3d 1215 (2005). As we held, "the termination statutes are narrowly drawn to meet the State's compelling interest to prevent harm or risk of harm to children and the court need not consider a dependency guardianship as an alternative to termination when no petition has been filed." *C.B.*, 134 Wn. App. at 345. And so long as MG's parental rights are recognized, JMG is not legally free to be adopted. The termination statutes are narrowly tailored and are therefore constitutional. The redefinition of the parent-child relationship as an

7

unbundled set of components proposed by MG is a matter for the legislative process, not the judicial process.

We reverse the order terminating MG's parental rights as to RMG. We affirm the order terminating MG's parental rights as to JMG.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

 

 

_____
Penoyar, J.

We concur:

_____
Worswick, C.J.

_____
Bjorgen, J.