[No. 49222–1. En Banc. March 24, 1983.]

*In the Matter of* JOSEPH ESGATE.

*Sharon M. Carberry*, for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Teresa Kulik* and *Leslie Nellermoe, Assistants,* for respondent.

PER CURIAM.—This case comes before us on certification from Division Three of the Court of Appeals. The court certified the following issue:

> Whether long–term foster care by the State for a developmentally disabled child constitutes a "stable and permanent home" for the purpose of RCW 13.34.180(6) such that a father's rights may be terminated to facilitate such care.

We answer this question in the affirmative. The trial court's termination of appellant Dan Esgate's parental rights to his son is affirmed.

The child in question, Joey Esgate, was born to Roberta and Dan Esgate in June 1977. Apparently from an early age, Joey exhibited behavioral disorders and delayed development. At 20 months Joey was taken to Seattle where he was examined by physicians at Children's Orthopedic Hospital. The reports from Children's Orthopedic Hospital indicate that Joey could not walk or talk. It was suggested that the delay was caused by the lack of normal brain functioning. Joey was placed in a special preschool program at Garfield Elementary School. During this period, Daniel and Roberta Esgate underwent counseling aimed at resolving marital difficulties between the couple. The Esgates separated in January 1980.

Roberta's boyfriend, Cliff Gagnier, soon moved into the

home where Roberta resided with Joey and Wesley, Roberta's other son. While living with his mother, Joey was so severely abused by the boyfriend that he was hospitalized. The emergency room report indicates that Joey had numerous bruises about the head, face, back, buttocks and scrotum. In addition, he suffered a ruptured duodenum (small intestine) caused by blunt trauma to the abdomen. Joey was placed in intensive care and the intestine was surgically repaired. The Department of Social and Health Services (DSHS) stepped in and, upon Joey's discharge, he was taken to a foster home. At the time of his injuries, Joey was 3 years old, but his development was consistent with a physical age of 12 to 16 months. Joey had severe emotional retardation which suggested either extremely abusive parents or some other form of emotional blunting.

DSHS filed a dependency petition which was granted.

DSHS eventually sought to have both parents' rights terminated and the matter came to trial in May 1981. On the first day of trial, Roberta voluntarily surrendered her parental rights. Consequently, the sole issue before the trial court was whether Dan Esgate's parental rights should also be terminated. The trial judge held that DSHS had established the statutory requirements for termination. An order terminating Dan Esgate's rights was entered and a disposition hearing held on the issue of placement. The judge ruled that Joey was to be placed in long–term foster care. He specifically provided that, at that time, Joey was not to be placed for adoption. Joey's placement was reviewed in November 1981 and the judge again denied DSHS permission to seek an adoptive home for Joey.

Meanwhile, Dan Esgate appealed the termination of his parental rights. Division Three certified the case to this court.

We hold that the termination was proper under the terms of RCW 13.34.180. RCW 13.34.180 allows a court to terminate the parent/child relationship when each of the six elements necessary to a termination petition are established and termination is in the best interests of the child.

RCW 13.34.180 provides, in pertinent part:

A petition seeking termination of a parent and child relationship may be filed in juvenile court. Such petition shall conform to the requirements of RCW 13.34.040 as now or hereafter amended and shall allege:

(1) That the child has been found to be a dependent child under RCW 13.34.030(2); and

(2) That the court has entered a dispositional order pursuant to RCW 13.34.130; and

(3) That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency under RCW 13.34.030(2); and

(4) That the services ordered under RCW 13.34.130 have been offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been offered or provided; and

(5) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future; and

(6) That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home;

The trial judge found that the State had produced clear, cogent and convincing evidence that all six requirements contained in RCW 13.34.180 had been met. Appellant argues that the evidence was insufficient to establish these elements and that the statute does not allow termination where long-term foster care rather than adoption is ordered for the child. We disagree.

Each of the statutory elements have been established by clear, cogent and convincing evidence. In particular, the State demonstrated that Dan Esgate is incapable of providing Joey with a suitable home. The State produced evidence that established that appellant had abused his stepson prior to Joey's birth, and had failed to respond to counseling. We find this evidence sufficient to establish the State's compliance with RCW 13.34.180's mandate that "all necessary services, reasonably available, . . . have been offered or provided". The testimony concerning appellant's

lack of progress in counseling also tended to establish, as required by RCW 13.34.180(5), that there was "little likelihood that conditions [would] be remedied" so that Joey could be returned to his father. Furthermore, the severe disabilities of this child present problems in parenting beyond the capabilities of most normal parents, let alone one with the emotional problems exhibited by Dan Esgate.

Appellant argues, however, that RCW 13.34.180(6) should be interpreted so as to allow termination of the parent/child relationship only when the child will be placed for adoption. We disagree. The statute requires only that the trial court find "[t]hat [the] continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home". RCW 13.34.180(6). The statute makes no reference to "adoptive home". Had the Legislature intended termination only in those cases where the child would be adopted, it could have so provided by substituting that term for the words "stable and permanent home". It has not done so and we decline appellant's invitation to construe "stable and permanent home" to mean adoptive home. This position is most consistent with general principles of statutory construction. *See State v. Martin,* 94 Wn.2d 1, 614 P.2d 164 (1980).

Furthermore, this construction of the statute best serves the legislative goal of insuring that the best interests of the child are protected. *See generally In re Aschauer,* 93 Wn.2d 689, 611 P.2d 1245 (1980). In the instant case, the State established that continuation of the parent/child relationship often created feelings of insecurity and instability in the child. Under such circumstances, termination was proper regardless of the child's adoptability.

In conclusion, we hold termination was proper. There exists substantial evidence from which the trial court could find that the statutory elements had been met. This court will not disturb these findings. *See In re Aschauer, supra.*

The judgment is hereby affirmed.