[No. 25698-0-I. Division One. August 26, 1991.]

*In the Matter of the Dependency of* A.V.D.

MARK VANDAM, *Appellant,* v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Respondent.*

*Suzanne Lee Elliott* of *Washington Appellate Defender Association,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Mary F. Li, Assistant,* for repondent.

AGID, J. — Mark VanDam appeals an order terminating his parent-child relationship with his daughter, "V", pursuant to RCW 13.34.180 *et seq.* VanDam contends that the evidence is insufficient to support the trial court's findings under RCW 13.34.180(6) and 13.34.190(2).[1] He further contends that the trial court should have ordered a guardianship under RCW 13.34.231 as a less restrictive alternative to termination.

V was born on April 30, 1988, to "D", her mother, and Mark VanDam (VanDam). D was 16 and VanDam was 21 when V was born. The parents never married. Following the child's birth, she and her parents lived with her maternal grandmother, Mrs. M, and her husband, Mr. M. D's first child, V's half brother, also resided in the grandparents' residence.[2]

On July 11, 1988, the Washington State Department of Social and Health Services (DSHS) filed a petition

---

[1] RCW 13.34.190(2) has been recodified at RCW 13.34.190(3).

[2] Mrs. M testified at trial that she and her husband were caring for V's halfbrother pursuant to a private guardianship agreement. D had subsequently relinquished her parental rights to her son and the grandparents were planning to adopt him.

alleging that V, then 2 1/2 months old, was dependent pursuant to RCW 13.34.030(2). The petition alleged that the child was at risk due to the mother's history of mental health problems, an incident in which the mother shook her "in a manner which could cause injury", domestic violence between the parents, and the parents' temporary housing situation. The petition further alleged that the parents failed to adequately clothe and feed their child.[3]

Two days later, an emergency shelter care hearing was held and an order issued directing Child Protective Services (CPS) to remove the child from her parents' custody. CPS placed her in the custody of her maternal grandmother. The parties entered into an agreed shelter care order under which V was to remain under the grandmother's care, the parents were permitted liberal supervised visitation, and both parents were ordered to take a parenting class and VanDam an anger management class.[4] In November 1988, the parents entered into an agreed dependency order.[5] Under the accompanying dispositional plan, the same conditions and orders listed in the shelter care order were mandated.

VanDam moved out of the M's home 2 weeks after CPS removed V from her parents' custody. He was earning only minimum wage and thus could not support V by

---

[3]The social worker who filed the dependency petition and observed the problems alleged therein did not testify at the termination hearing, and no other evidence was presented to support those allegations. Harriett Rosser, a public health nurse who visited the family regularly during this period, found that V was healthy and had not been abused.

[4]The mother was also ordered to obtain individual counseling. Because the mother has not appealed the termination of her parental rights, evidence pertaining to her is not relevant here.

[5]Because the dependency order was agreed and not appealed, we, like the trial court, are unable to review it despite our misgivings as to its propriety under the facts of this case. We are at a loss to determine why this case was pursued. However, it unfortunately has progressed beyond the point where the courts can attempt to derail the train which, once on this track, moves inexorably toward a termination trial.

himself. He therefore decided to look for work in other areas, and ultimately settled in California. While in California, VanDam worked for a major hotel chain. He hoped to transfer to a Seattle area hotel after working for his employer for the requisite 1 year.

While living out of state, VanDam kept in regular contact with V through Mrs. M. He sent postcards, special occasion and birthday cards and presents. He also called Mrs. M once or twice a month. Upon his return to Washington state 3 weeks before trial, VanDam visited V daily. Mrs. M testified that V knows her father and that he loves her.

On June 12, 1989, DSHS filed a petition to terminate both D's and VanDam's parental rights. On January 9, 1990, a hearing on the petition was held.

At the time of trial, VanDam still had not begun the parenting or anger management classes. He testified that he had difficulty arranging them because he had an erratic work schedule and was not sure he could afford the classes. He also testified that he did not feel he needed the anger management class. He acknowledged, however, that he could benefit from the parenting class and said that he would be willing to take both if he could retain his parental rights.

At the outset of the termination hearing, VanDam indicated that he was willing to relinquish his parental rights as long as the M's continued to allow him to visit V. Mrs. M testified that she and her husband were willing to allow VanDam's continued visitation. During the trial VanDam changed his mind several times as to whether he wanted to retain or relinquish his parental rights. When

he finally testified, however, he explained that he had not realized that relinquishing his parental rights would also legally terminate his visitation rights.

At the time of trial, V had been living in her maternal grandmother's home since birth. Mrs. M testified that V was a well adjusted, bright child who got along well with her half brother. VanDam did not dispute that V is well cared for by the M's. At the close of the hearing, the trial court ordered termination of both parents' parental rights to V. VanDam's appeal followed.

### FINDING OF DETRIMENT

VanDam first assigns error to the trial court's finding that continuation of the parent-child relationship between V and her natural parents clearly diminishes V's prospects for early integration into a stable and permanent home. He broadly argues that the trial court denied him due process because there was insufficient evidence to support the trial court's order of termination.

■ The courts have historically recognized that a biological parent has a fundamental liberty interest in the care, custody and control of his or her child. *Meyer v. Nebraska*, 262 U.S. 390, 399, 67 L. Ed. 1042, 43 S. Ct. 625, 29 A.L.R. 1446 (1923); *Santosky v. Kramer*, 455 U.S. 745, 753, 71 L. Ed. 2d 599, 102 S. Ct. 1388 (1982); *In re Sumey*, 94 Wn.2d 757, 762, 621 P.2d 108 (1980). However, that fundamental right is not absolute. The State has both a right and obligation as parens patriae to intervene to protect the child when the parent's actions or inactions endanger the child's physical or emotional welfare. *Sumey*, 94 Wn.2d at 762.

Under RCW 13.34.180 and .190, a court may terminate parental rights if it finds that (1) the requisite allegations[6] are supported by clear, cogent and convincing evidence; and (2) termination is in the best interests of the child. VanDam challenges the trial court's finding under RCW 13.34.180(6), that allowing the parent-child relationship between V and her father to continue clearly diminishes V's prospects for early integration into a stable and permanent home.

■ This court must uphold the trial court's factual findings if they are supported by substantial evidence. *In re Sego*, 82 Wn.2d 736, 739, 513 P.2d 831 (1973). In termination proceedings, because DSHS is required to prove each of the statutory allegations by clear, cogent and convincing evidence, the evidence must be substantial enough to allow the court to conclude that the allegations are "highly probable". *Sego*, 82 Wn.2d at 739. Because only the trial court has the opportunity to hear the testimony and observe the witnesses' demeanor, an appellate court may not judge the credibility of witnesses. Nor is this court entitled to weigh the evidence. *Sego*, 82 Wn.2d at 739-40.

---

[6]DSHS must establish the following allegations:

"(1) That the child has been found to be a dependent child under RCW 13.34.030(2); and

"(2) That the court has entered a dispositional order pursuant to RCW 13.34.130; and

"(3) That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency under RCW 13.34.030(2); and

"(4) That the services ordered under RCW 13.34.130 have been offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been offered or provided; and

"(5) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future; and

"(6) That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home[.]" RCW 13.34.180.

VanDam concedes that DSHS presented sufficient evidence to prove allegations (1) through (5).

VanDam concedes on appeal that DSHS proved allegation (5) which alleges that there is little likelihood that conditions will be remedied so that V can be returned to her father in the near future. *See* RCW 13.34.180(5). Further, the record establishes that VanDam conceded this point at trial and is really only interested in retaining visitation rights.[7] Similarly, counsel for VanDam states in his brief that VanDam would like V to stay in her maternal grandmother's home and that he seeks only to continue his relationship with his daughter through visitation.

Although VanDam admits that he will not be able to care for V in the near future, he argues that her current living situation with her maternal grandmother is nevertheless a stable and permanent one. He claims that there is no evidence that continued contact with her father will be detrimental to V and points out that even the trial court found that such continued contact would be in V's best interests.

It is undisputed that V has lived in her maternal grandmother's home since birth and that she is thriving under her grandmother's care. Although she is being cared for by a close relative, V is still a dependent child in foster care. As long as she is in foster care, her living situation will by definition remain temporary. She will not have a permanent home until her parents resume custody or their parental rights are terminated and she is adopted. Thus, while VanDam's assertion that V's current placement with her grandmother is a stable one is accurate, it does not undercut the trial court's determination that continuing his parental rights inhibits her

---

[7]Although VanDam offered conflicting testimony concerning his desire or ability to assume custody of V in the future, he admitted that he would not be able to do so in the near future. While he testified that he might be ready to care for V in the next 3 or 4 years if he were remarried, had his own residence and were financially fit, he also testified that he just wanted to maintain contact with V by seeing her on a regular basis. Both he and Mrs. M testified that he would be willing to relinquish his parental rights if he could retain his right to visit V.

ability to be integrated, as an adopted child, into that home.

■ VanDam further argues that a guardianship would give V the permanency and stability that she needs while allowing him to continue his relationship with his daughter. The intent of a guardianship, however, is to give the parent an opportunity to take those steps necessary to resume custody of the child in the foreseeable future. A guardianship is only a temporary situation:

> The primary difference between a guardianship and a termination action is the *permanence* afforded the child. A guardianship is not a "permanent" plan for the child. The parent or any party may seek to modify the guardianship. RCW 13.34.233. The parent may seek to set aside the guardianship and request the return of the child. This request may occur several years after the guardianship has been established.

(Italics ours.) Washington State Bar Ass'n, *Family Law Deskbook* § 50.9, at 50-24 (1989). If a guardianship were imposed, V's father could come back many years later and seek to have the guardianship terminated on the ground that he was finally able to care for her. Indeed, he testified that he might well do so.[8] We therefore agree with the trial judge's conclusion that a guardianship, because it is an inherently temporary situation, would necessarily keep V in "limbo" by postponing her early integration into a stable and *permanent* home. *See In re Ramquist*, 52 Wn. App. 854, 861-62, 765 P.2d 30 (1988) (termination necessary to allow integration of child into stable and permanent home of foster family with whom child had lived for several years), *review denied*, 112 Wn.2d 1006 (1989).[9]

---

[8]As discussed *infra*, the trial judge found that if VanDam were to return many years later and seek to terminate a guardianship, this would potentially disrupt not only V's integration into her grandparent's home but her relationship with her half-brother. The judge therefore found that the potential for significant instability inherent in a guardianship compelled the conclusion that termination of VanDam's parental rights, rather than a guardianship, was in V's best interests.

[9]As authority for his contention that a guardianship can provide a "stable and permanent" home for a child, VanDam cites *In re Esgate*, 99 Wn.2d 210,

In light of the foregoing, we hold that DSHS proved by clear, cogent and convincing evidence that continuation of the parent-child relationship between V and her father would clearly diminish her prospects for early integration into a stable and permanent home.

## BEST INTERESTS FINDING

VanDam next assigns error to the trial court's finding that termination of VanDam's parental rights is in V's best interests. Once the trial court finds that each allegation provided in RCW 13.34.180 has been proven by clear, cogent and convincing evidence, it must then decide whether termination is in the best interests of the child. RCW 13.34.190. If the court determines that termination is not in the best interests of the child, it has discretion not to order a termination even if DSHS has established the allegations of RCW 13.34.180(1)-(6). *Ramquist*, 52 Wn. App. at 860.

 While the allegations of RCW 13.34.180 must be supported by clear, cogent and convincing evidence, the best interests determination ordinarily need only be supported by a preponderance of the evidence. *See Ramquist*, 52 Wn. App. at 860. However, in this case, the trial court relied on its finding that termination was in V's best interests when it determined that continuation of the parent-child relationship would be detrimental to her early integration into a stable and permanent home. Because the court used the best interests finding to support its finding of detriment, we conclude that the former must be supported by the same quantum of proof required for the latter. Thus, DSHS was required to prove by clear, cogent and convincing evidence that termination of VanDam's parental rights was in V's best interests.

---

214, 660 P.2d 758 (1983). However, VanDam misapprehends the holding of *Esgate*. The *Esgate* court merely held that a court may terminate parental rights, if it is in the best interests of the child, even though the child (there, severely retarded) may not be "adoptable" or may, in the trial judge's view, require long-term foster care. 99 Wn.2d at 214.

■ Washington courts have held that the factors involved in determining the "best interests" of a child are not capable of specification; rather, each case must be decided on its own facts and circumstances. *In re Aschauer*, 93 Wn.2d 689, 695, 611 P.2d 1245 (1980); *In re Becker*, 87 Wn.2d 470, 477, 553 P.2d 1339 (1976). VanDam contends that because the trial court found that continued contact between him and V was in her best interests, termination of her father's parental rights was clearly not in V's best interests.

■ DSHS and VanDam agree, however, that V's best interests would be served by allowing her to remain in the full-time care of her maternal grandmother where she has been since birth. Further, VanDam has not challenged the trial judge's finding that there is little likelihood that he would be able or willing to provide a home for her in the foreseeable future. In deciding whether termination was in V's best interests, the judge also considered the fact that she had formed attachments to her maternal grandmother and half brother. He was entitled to consider those attachments in determining V's best interests. *See In re Tarango*, 23 Wn. App. 126, 130, 595 P.2d 552, *review denied*, 92 Wn.2d 1022 (1979). He further considered the potential for significant instability if VanDam could seek to terminate a guardianship several years later. Based on all of this evidence, the judge determined that V's best interests would be served by allowing her to remain permanently in the home of her maternal grandmother, stepgrandfather and half brother. We find that this determination was supported by clear, cogent and convincing evidence.

We agree with VanDam that it is logically inconsistent for the trial court to find that his continued contact with V would clearly benefit her, and at the same time, that continuation of the father-child relationship retards her chances for integration into a stable and permanent home. The inconsistency, however, is a product of the

statutory scheme and is not of the trial court's making. Under the applicable statutes and the procedural circumstances of this case, the trial court was forced to choose between the temporary expedient of a guardianship and the draconian alternative of parental rights termination.[10]

### LESS RESTRICTIVE ALTERNATIVE ARGUMENT

VanDam finally argues that the trial court was required to order a guardianship as a less restrictive alternative to termination.[11] The first five statutory requirements for establishing a guardianship are the same as those for termination.[12] *Compare* RCW 13.34-.180(1)-(5) *with* RCW 13.34.231(1)-(6). Unlike a termination, however, the court is not required to find as a prerequisite to establishing a guardianship that continuation of the parent-child relationship clearly diminishes

---

[10]It appears that an ideal solution here would have been an open adoption by the maternal grandparents. This would have assured V the permanence she needs and the statute dictates while allowing her emotional connection with her father to continue despite his admitted inability to care for her. Under the statutory scheme, however, the trial judge lacked the authority to permit such a solution.

[11]Although a guardianship petition was never filed in this case, both VanDam's counsel and counsel for V 's mother argued at trial that a guardianship would be more appropriate than termination.

[12]Under RCW 13.34.231, a court may establish a guardianship if the court finds by the preponderance of the evidence that:

"(1) The child has been found to be a dependent child under RCW 13.34.030(2);

"(2) A dispositional order has been entered pursuant to RCW 13.34.130;

"(3) The child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency under RCW 13.34.030(2);

"(4) The services ordered under RCW 13.34.130 have been offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been offered or provided;

"(5) There is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future; and

"(6) A guardianship rather than termination of the parent-child relationship or continuation of the child's current dependent status would be in the best interest of the family."

the child's prospects for early integration into a stable and permanent home. In addition, the court must find that a guardianship rather than termination is "in the best interest of the *family*." (Italics ours.) RCW 13.34-.231(6). (Compare the requirements of termination which focus on "the best interests of the *child*." (Italics ours.) RCW 13.34.190(2).)

VanDam contends that the Legislature intended a guardianship to be established in cases such as this one where it is unlikely that the parents will ever be able to resume custody but where maintaining the parent-child relationship will not result in instability or lack of permanence for the child. A trial court may order a guardianship as a "less drastic alternative" to termination where appropriate. *In re Pawling*, 101 Wn.2d 392, 401, 679 P.2d 916 (1984). But, as we indicated above, a guardianship is inherently a temporary situation because either biological parent can petition the court to modify or terminate it at any time. RCW 13.34.233. Thus, the trial judge correctly determined that a guardianship by definition could not provide V with a permanent home.

■ The foregoing analysis does not dispose of the issue, though, because the court is not required to find, as a prerequisite to establishing a guardianship, that continuation of the parent-child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home. However, when, as here, a conflict arises between the statutes' requirements, the court should focus on the best interests of the child. *Ramquist*, 52 Wn. App. at 862-63. The trial judge found that it was in V's best interests to have a stable and permanent home. He further found that adoption, rather than a guardianship, would give V the stability and permanency she needs. That best interests determination is supported by clear, cogent and convincing evidence. Thus, the trial

judge did not err when he decided not to establish a guardianship.[13]

The judgment is affirmed.

GROSSE, C.J., and WEBSTER, J., concur.

---

[13]VanDam apparently argues that even if the court finds it necessary to terminate his parental rights, he should still be allowed to retain the right to visit his daughter. A termination order eliminates all legal rights of a parent to his or her child, including visitation rights. RCW 13.34.200(1). Unfortunately, although the trial court found that VanDam's continued contact with V is in her best interests, the statutory scheme does not allow us to grant a biological parent visitation rights after his parental rights have been terminated. *See In re Ferguson,* 41 Wn. App. 1, 8, 701 P.2d 513, *review denied,* 104 Wn.2d 1008 (1985).