

COURT OF APPEALS DIV I
STATE OF WASHINGTON

2013 JUL 22 PM 1: 14

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Guardianship of D.G.-S., D.O.B. 03/14/2006. | No. 69040-0-I |
| STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH SERVICES, | DIVISION ONE |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| DWAYNE FITZGERALD STELIVAN, | FILED: July 22, 2013 |
| Appellant. | |

BECKER, J. — The Department of Social and Health Services petitioned for an order establishing a guardianship for DG-S, the son of appellant Dwayne S., and appointing Dwayne's sister as guardian. The trial court established the guardianship after finding that Dwayne has a serious and ongoing problem with mental illness. Substantial evidence supports the trial court's determination that there is little likelihood Dwayne's mental condition will be remedied so that his son can be returned to him in the near future. The guardianship order provides stability and safety for the child while allowing the father-son relationship to continue. We affirm.

This case involves a statutory alternative to parental termination designed to "establish permanency for children in foster care through the appointment of a guardian and dismissal of the dependency." RCW 13.36.010. See In re

Guardianship of K.B.F., No. 43922-1-II, 2013 WL 2606570 (Wash. Ct. App. June 11, 2013).[1]

Under the statute, any party to a dependency proceeding, including the State, can petition the juvenile court to establish a guardianship for a dependent child. The court must establish the guardianship if it finds "by a preponderance of the evidence that it is in the child's best interests to establish a guardianship, rather than to terminate the parent-child relationship and proceed with adoption, or to continue efforts to return custody of the child to the parent." RCW 13.36.040(2)(a). A dependency guardianship may be terminated on the motion of any party, including the guardian, when it is proven by a preponderance of the evidence that there has been a substantial change in the circumstances of the child or the guardian and that it is in the child's best interests to terminate the guardianship. RCW 13.36.070(1).

Because Dwayne did not agree to entry of a guardianship order, the Department of Social and Health Services also had to prove six statutory elements by a preponderance of the evidence:

> (c)(i) The child has been found dependent;
> (ii) The court has entered a dispositional order pursuant to RCW 13.34.130;
> (iii) At the time of the hearing on the guardianship petition, the child has been removed from the parent's custody for at least

---

[1] Although the court in K.B.F. described the statute as "relatively new," a guardianship as an alternative to a continuing dependency or termination has been available for many years. See LAWS OF 1981, ch. 195; see also Aba Sheikh v. Choe, 156 Wn.2d 441, 445, 128 P.3d 574 (2006) ("A dependency guardianship is more permanent than foster care but less so than outright adoption.") In 2010, the earlier statute was repealed and replaced by a similar statute with somewhat different procedural requirements.

> six consecutive months, pursuant to a finding of dependency;
>
> (iv)  The services ordered under RCW 13.34.130 and 13.34.136 have been offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been offered or provided;
>
> (v)  There is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future; and
>
> (vi)  The proposed guardian has signed a statement acknowledging the guardian's rights and responsibilities toward the child and affirming the guardian's understanding and acceptance that the guardianship is a commitment to care for the child until the child reaches age eighteen.

RCW 13.36.040(2).

Here, it is undisputed that five of the six statutory elements were met. Dwayne challenges only the trial court's conclusion that there was little likelihood that conditions would be remedied such that DG-S could be returned to him in the near future.[2]

We will affirm the court's order if substantial evidence supports the trial court's findings in light of the degree of proof required. In re Welfare of Aschauer, 93 Wn.2d 689, 695, 611 P.2d 1245 (1980). Because only the trial court has the opportunity to hear the testimony and observe the witnesses, this court will not judge the credibility of the witnesses or weigh the evidence. In re Dependency of A.V.D., 62 Wn. App. 562, 568, 815 P.2d 277 (1991).

In determining what constitutes the "near future," a court considers a child's particular circumstances, including his age, placement history, the length

---

[2] Although Dwayne assigns error to six findings of fact, he provides no argument as to why these findings were entered in error. Assignments of error without argument need not be considered. In re Welfare of L.N.B.-L., 157 Wn. App. 215, 243, 237 P.3d 944 (2010).

3

of time he has been out of the parent's care, and the amount of contact with the parent. In re Welfare of C.B., 134 Wn. App. 942, 945, 143 P.3d 846 (2006).

DG-S was born on March 14, 2006. According to undisputed findings, he was taken into protective custody in April 2006, after Dwayne had a psychotic break at Harborview Medical Center. He was found dependent as to his mother in September 2006. She was serving a jail sentence at the time of his birth. The boy was placed initially with Dwayne, his father. After a fact-finding hearing in November 2006, the court found the boy dependent as to Dwayne.

During the dependency, Dwayne spent a considerable amount of time in institutions, either incarcerated in jail or or as a psychiatric patient. The child was briefly returned to Dwayne's care in September 2008. He was removed again in February 2009 when Dwayne was involuntarily hospitalized for in-patient psychiatric treatment. Dwayne was involuntarily hospitalized again in March, June, and October 2009. In 2012, Dwayne told a case manager at Harborview Hospital that he had not taken his prescribed medications for two years and that he does not believe he has a mental health disorder.

The petition for guardianship was filed on July 25, 2011. In April 2012, shortly before the guardianship trial, Dwayne's mental health began to deteriorate. He was arrested in May 2012 on assault charges and was incarcerated during a portion of the trial. Both experts who testified at trial, Dr. Joanne Solchany and Hiromi Lorenz, recommended that DG-S not be placed with Dwayne because of the severity of Dwayne's mental health condition. Lorenz made this recommendation even though she also gave a favorable report

4

of the 90-minute visitation she observed between father and son. Dwayne, in contrast, testified at trial that he has been completely misdiagnosed, intends to go without medications, and wants to have the misdiagnosis removed from his record.

The trial court found that Dwayne was a good father when mentally stable and compliant with medications, but that he became angry and threatening at other times:

> The record of [his] mental health history establishes a clear pattern of behavior when he decompensates. He develops rigid thinking, becomes angry and threatening, and develops pressured speech. . . . As his mental health decompensates, these behaviors increase and bring him into contact with law enforcement resulting in incarceration or involuntary commitment.

> It was clear from the testimony that when [Dwayne] is compliant with his medication and stable he is a really good father. . . . . [H]e is able to engage with his son appropriately and function in society as was demonstrated by the broad support he has developed in the community.

Dwayne does not challenge these findings and so they are verities on appeal. In re Interest of Mahaney, 146 Wn.2d 878, 895, 51 P.3d 776 (2002).

Dwayne contends that the court erred in concluding there was little likelihood that conditions would be remedied so that his son could be returned to him in the near future. He maintains the record shows that he made substantial progress in his required services and showed significant insight into his mental health needs. Although Dwayne did show he can have positive interactions with his son, substantial evidence supports the finding that his mental health problems, being severe and unpredictable, pose a significant and continuing risk

to DG-S. Dwayne's unwillingness to take medication and to acknowledge the depth of his problems only magnifies that risk.

At the time of the guardianship trial, DG-S was six years old, had been in a number of different foster care placements, and had spent very little time in Dwayne's care because Dwayne was repeatedly institutionalized and his behavior was erratic and unpredictable.

Unlike in Welfare of C.B., a termination case where the State failed to offer evidence that the mother was unlikely to improve in the near future, here the State offered substantial evidence on that point. Considering the particular circumstances of DG-S's case, the trial court correctly concluded there was little likelihood the boy could be returned to his father's care in the near future. See In re Dependency of T.R., 108 Wn. App. 149, 164-65, 29 P.3d 1275 (2001) (one year is well beyond the foreseeable future of a six-year-old child). The disputed conclusion will not be disturbed.

The order establishing the guardianship and appointing the guardian is affirmed.

Becker, J.

WE CONCUR: