# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |
|---|---|
| In the Matter of the Dependency of S.T. (DOB: 03/25/04), <br><br> a Minor, <br><br> STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH SERVICES, <br><br> Respondent, <br><br> v. <br><br> DIVINA TANGALAN, <br><br> Appellant. | No. 76906-5-I <br><br> DIVISION ONE <br><br><br><br><br><br><br><br> UNPUBLISHED <br><br> FILED: <u>February 26, 2018</u> |

Cox, J. — Following a nearly three-year dependency during which Divina Tangalan made insufficient progress with court-ordered services, the superior court terminated her parental rights to her son S.T. Contrary to Tangalan's assertions on appeal, the Department of Social and Health Services (Department) proved by clear, cogent, and convincing evidence that it offered or provided her all necessary services during the dependency. We affirm the order of termination.

Tangalan is the biological mother of S.T. In 2013, the superior court declared S.T. dependent as to his father. In June 2014, the court declared him dependent as to his mother as well.

The dependency order noted that Tangalan had been diagnosed with Bi-Polar disorder as a youth and had a significant criminal history, including several drug offenses in Washington. In 2013, Tangalan pleaded guilty to Custodial Interference for taking S.T. from her mother's home, keeping him in hotels for several months, and leaving him unattended in hotels for hours. In 2014, Tangalan pleaded guilty to drug charges in Oregon. Prior to sentencing, she attempted to hang herself in a hotel room in front of S.T. When police arrived, she asked them to leave S.T. with a man who has three felony manslaughter convictions.

The dependency court concluded that Tangalan had "engaged in a pattern of conduct that evidences a serious disregard of consequences to [S.T.] of such magnitude as to constitute a clear and present danger to [S.T.'s] health, welfare, and safety."[1] The court ordered her to complete a drug/alcohol evaluation and any recommended treatment, urinalysis, and a psychological evaluation and any recommended treatment.

Tangalan appealed the dependency order and we affirmed. We stated in part:

> . . . .[T]he key findings that support the court's determination of neglect are . . . unchallenged on appeal. For instance, the court

---

[1] Exhibit 6 at 5.

2

found that "[f]or a better part of [S.T.'s] life, he has been raised in the care of his maternal grandmother." The court also made written and oral findings that for a significant part of S.T.'s childhood, Tangalan was incarcerated, and that when she was not incarcerated, she was either unable or unwilling to provide a home for him. The court also found that Tangalan removed S.T. from her mother's home on more than one occasion and from the school that he had consistently attended "evidently without regard for his ongoing need for stability and structure in his life." The court further determined when S.T. was in Tangalan's care, she subjected him to trauma, which caused S.T. to exhibit stress behaviors and to require trauma therapy.

. . . . [T]he court determined that Tangalan demonstrated a disregard of risks and consequences to S.T. by deliberately choosing not to inform herself about [her partner's] crimes. . . . Substantial evidence supports the determination of dependency under RCW 13.34.030(6)(b).

Tangalan also challenges the court's finding that S.T. has "no parent capable of adequately caring for him at this time." . . .

At the time of the April 2014 fact-finding hearing, there was a five-year no-contact order in place prohibiting all contact between Tangalan and S.T. Her criminal matters were not resolved, as Tangalan was still awaiting sentencing on Oregon drug charges. Tangalan had terminated court-ordered drug treatment without completing the program. She had not verified her participation in urinalysis testing, much less established that she was drug free. Tangalan testified that she was living with a friend, but she had only lived there for a couple of months and was not named on the lease. The court found that despite a previous mental health issue, Tangalan was not currently engaged in any treatment. The court also found that Tangalan had "angry outbursts" during the proceedings and demonstrated "little control over her temperament." And significantly, Tangalan had not been the primary caretaker of S.T. for the majority of his life. This "constellation of facts" supports the juvenile court's determination that S.T. was dependent under subsection (c).[2]

---

[2] In re Dependency of S.T., 186 Wn. App. 1028 (2015) (footnotes omitted).

3

In January 2016, the Department filed a petition to terminate Tangalan's parental rights. The petition alleged that while Tangalan had participated in UAs in 2014, all but one test was positive for substances. She participated in some mental health services, but she was eventually discharged due to lack of participation. She also failed to complete a drug/alcohol treatment program. The petition concluded that "[e]ven though the mother has participated in some of her services, she continues to make poor choices which affects the safety and well-being of her son. . . . The mother has not successfully participated in her court ordered services nor made any progress in correcting her parental deficiencies."[3]

Following trial on the petition, the court entered the following findings of fact and conclusions of law, most of which are unchallenged:

> 2.6 A dispositional order was entered pursuant to RCW 13.34.130 on June 4, 2014, as to the mother. The mother was ordered to complete a drug/alcohol evaluation and follow treatment recommendations related to substance abuse, participate in random urinalysis (UAs) three times per week with ETG for 90 days, and complete a psychological evaluation with parenting component and follow recommendations. During the First Dependency Review hearing on August 4, 2014, the mother was also ordered to engage in parent coaching.
>
> . . .
>
> 2.8 **Services ordered under RCW 13.34.130 have been expressly and understandably offered or provided and all necessary services reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided.**
>
> 2.9 The mother was offered significant services throughout the dependency. The mother made attempts to engage early in the dependency but was in minimal compliance and making minimal progress by November 2015.

---

[3] Clerk's Papers at 10.

4

2.10 The mother completed a psychological evaluation with parenting component with Dr. [Steve] Tutty, provided some of the UAs referred by the Department but missed others, and engaged in some substance abuse and mental health treatment at [] various facilities . . . . The mother also engaged in parent coaching with Esther Patrick.

2.11 Lidia Lopez was the assigned social worker throughout most of the dependency . . . . Ms. Lopez testified about how she offered services to the mother, but the mother still had not substantially addressed her parental deficiencies and was in and out of jail during Ms. Lopez's time on the case.

2.12 Caitlyn Hynes was the assigned social worker after Ms. Lopez. Ms. Hynes testified about her efforts to offer services to the mother in Oregon, but the mother refused.

2.13 Maribeth Sheppard supervised Lidia Lopez and Caitlyn Hynes . . . Ms. Sheppard testified about the importance of permanency and how termination of parental rights was in the child's best interests.

2.14 Dr. Tutty's psychological evaluation with parenting component did not recommend reunification. **The evaluation recommended a parenting class (the mother requested parent coaching as a substitute service),** individual mental health counseling, and UAs.
. . . .

2.15 The mother's most significant opportunity to reunite with her son occurred when she lived at Passage Point. The mother was assigned to a Passage Point life coach, Shantala Martin. The mother was offered mental health treatment and intensive outpatient at Passage Point, but the mother did not consistently engage.

2.16 Contrary to the mother's assertions, she was discharged from Passage Point for noncompliance with the program requirements . . . .

. . . .
2.18 The mother worked with parenting coach Esther Patrick and grew to have better skills as a result of their work together. However, they stopped working together before the service was completed.

. . . .

5

2.21 The mother's drug addiction was a prominent problem throughout the dependency.

2.22 After inpatient treatment at Prosperity Wellness, the mother stopped seeking any services for substance abuse or mental health despite receiving a service plan and referrals from Prosperity Wellness before she was discharged.

2.23 The mother only visited with the child three times in 2016.

2.24 The mother still has not accept[ed] responsibility for her actions that led to the Department's involvement . . . .

2.25 There is little likelihood that conditions will be remedied so that the child can be returned to the mother within the near future.

2.26 . . . The mother has not demonstrated sobriety or engaged in mental health treatment since she left Prosperity Wellness. The mother has made minimal effort to visit the child during the past year.

2.27 Continuation of the parent-child relationship between the above-named minor child and the mother clearly diminishes the child's prospects for early integration into a stable and permanent home.

2.28 Besides a short period of time with the mother, the child has always lived with his maternal grandmother. The primary permanent plan is adoption, and adoption cannot occur unless parental rights are terminated.
. . . .
2.30 The child's mother is unfit to parent this child.

2.31 Termination of the parent-child relationship between the child and the mother is in the child's best interest. [S.T.]'s Court Appointed Special Advocate, Susan Lindsay, began advocating for him in October of 2013 and testified to her belief that termination of parental rights is in his best interest.[4]

---

[4] Clerk's Papers at 379-81. Tangalan assigns error to Findings of Fact 2.8, 2.25, 2.27, and 2.31.

The court ruled that the statutory prerequisites to termination had "been proven by clear, cogent and convincing evidence unless otherwise noted,"[5] and entered an order terminating Tangalan's parental rights.

Tangalan appeals.

## TERMINATION

Parental rights are a fundamental liberty interest protected by the United States Constitution.[6] To terminate parental rights, the State must satisfy a two-step test. First, it must prove the following statutory elements by clear, cogent, and convincing evidence:

> (a) That the child has been found to be a dependent child;
> (b) That the court has entered a dispositional order pursuant to RCW 13.34.130;
> (c) That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency;
> (d) That the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided;
> (e) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future . . . ; and
> (f) That the continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home.[7]

---

[5] Clerk's Papers at 381.

[6] Santosky v. Kramer, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982).

[7] RCW 13.34.180(1).

If the State satisfies these criteria, the court may terminate parental rights if it finds by a preponderance of the evidence that termination is in the "best interests" of the child.[8] On review, unchallenged findings of fact are considered verities.[9] Challenged findings will be upheld "[i]f there is substantial evidence which the lower court could reasonably have found to be clear, cogent and convincing . . . ."[10] Because the trial court hears the testimony and observes the witnesses, its decision is entitled to deference.[11] We defer to the trier of fact on issues of conflicting testimony, credibility of the witnesses, and the weight or persuasiveness of the evidence.[12]

### Provision of Services Under RCW 13.34.180(1)(d)

The trial court found that the Department offered or provided Tangalan all necessary services.[13] The court also concluded that the Department proved this fact by clear, cogent and convincing evidence.[14] Tangalan assigns error to the court's finding and conclusion, arguing that Dr. Tutty recommended a "parenting

---

[8] RCW 13.34.190(1)(b).

[9] In re Interest of J.F., 109 Wn. App. 718, 722, 37 P.3d 1227 (2001).

[10] In re Welfare of Aschauer, 93 Wn.2d 689, 695, 611 P.2d 1245 (1980).

[11] In re Dependency of A.V.D., 62 Wn. App. 562, 568, 815 P.2d 277 (1991).

[12] Dep. of A.V.D., 62 Wn. App. at 568; In re Welfare of S.J., 162 Wn. App. 873, 881, 256 P.3d 470 (2011); State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

[13] Findings of Fact 2.8.

[14] Conclusion of Law 3.3.

class akin to the Triple P parenting program,"[15] but the Department provided parent coaching instead. She does not dispute the Department's claim that she requested parent coaching in lieu of a parenting class, and that her counsel, the CASA, and the Department social worker were present when she did so. Nor does she dispute the Department's claim that all agreed that she "would benefit more from a parent coach who could provide one on one instruction" than she would from a parenting class. Tangalan argues, however, that the dependency order required the Department to provide the specific services recommended by Dr. Tutty, and that the parties could not substitute services without the court's permission. She contends "[t]his Court should not condone a social worker's decision to disregard the dependency court's disposition order" and claims that doing so will encourage social workers "to take matters into their own hands and disregard court orders . . . ."[16] This contention fails for several reasons.

First, the record demonstrates that the Department offered a parenting class, but Tangalan simply wanted a parenting coach instead. Thus, the Department fulfilled its duty to offer or provide court-ordered services under RCW 13.34.180(1)(d).

Second, the record indicates that the substituted service – one-on-one parent coaching -- was actually an upgrade from the court-ordered parenting *class*. Social worker Lopez testified that Tangalan, her attorney, the CASA, and

_____

[15] Exhibit 51 at 15-16.

[16] Appellant's Brief at 16.

Lopez "came to the conclusion that mom *would be better served* by a parenting coach during her visits so she would have more hands-on, one-on-one instruction with [S.T.]."[17] This is consistent with the rule that services must be tailored to the individual parent's needs.[18] Third, and most importantly, Tangalan waived the parenting class service by her words and conduct.[19] Tangalan does not challenge the court's finding that "*the mother requested* parent coaching as a substitute service."[20] Nor does she dispute the Department's allegation that her attorney was present when she requested parent coaching instead of a parenting class. She thus waived the court-ordered parenting class.

Finally, "[w]here the record establishes that the offer of services would be futile, the trial court can make a finding that the Department has offered all reasonable services."[21] The court's unchallenged findings of fact, particularly those recounting Tangalan's failure to complete services, demonstrate sobriety, or engage in mental health treatment, establish that a parenting class would have been futile.

---

[17] Report of Proceedings (February 7, 2017) at 447 (emphasis added).

[18] In re Dependency of T.R., 108 Wn. App. 149, 161, 29 P.3d 1275 (2001).

[19] In re Welfare of S.V.B., 75 Wn. App. 762, 770, 880 P.2d 80 (1994) (Department fulfills its service obligations if it offered services to parent, "by words, conduct or both, waived his right to such services.").

[20] Findings of Fact 2.14 (emphasis added).

[21] In re Matter of K.M.M., 186 Wn.2d 466, 483, 379 P.3d 75 (2016). Findings of Fact 2.14.

The court's finding that all necessary services were offered or provided is supported by substantial evidence. Tangalan's remaining claims fail since they rest on the erroneous premise that all necessary services were not provided.

We affirm the order terminating parental rights.

_Cox, J._

WE CONCUR:

_Mann, J._                              _Becker, J._