

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Parental Rights to | ) | |
| | ) | No. 38824-7-III |
| D.L.E., | ) | |
| | ) | |
| | ) | |
| | ) | UNPUBLISHED OPINION |
| | ) | |

STAAB, J. — A.E.'s parental rights to his child, D.L.E. were terminated following a trial. On appeal, A.E. contends that the Department of Children, Youth, and Families (Department) failed to offer him all reasonably available and necessary services to remedy his parental deficiencies in the near future pursuant to RCW 13.34.180(1)(d). Namely, that the Department failed to offer A.E. an additional substance abuse assessment, housing assistance, and more tailored transportation assistance. We disagree and affirm the termination.

BACKGROUND

The facts are taken from the trial court findings, exhibits, and testimony.

In December 2019, then six-year-old D.L.E., the child's father A.E. and mother H.H., came to the attention of the Department. The Department filed a dependency petition in December 2019, and dependency was established on February 6, 2020.

At the disposition hearing, the court found A.E.'s primary parental deficiency was his current and chronic chemical dependency issues. Additional deficiencies included lack of parenting skills, lack of safe housing, untreated mental health issues, and domestic violence. The court ordered A.E. to participate in a parenting education course, a drug and alcohol evaluation and related treatment, a domestic violence perpetrator evaluation and related treatment, and submit to random UAs.[1] The court ordered D.L.E. remain in licensed foster care.

1. Dependency Period

In February 2020, A.E. was arrested for assault in the second degree, felony violation of a domestic violence court order, and attempted theft in the first degree. A.E. was incarcerated for these crimes until approximately September or October 2020. While A.E. was incarcerated, he completed a drug and alcohol evaluation with The Center for Alcohol and Drug Treatment. A.E. was diagnosed with severe cannabis use disorder, severe opioid use disorder, methamphetamine-type substance use disorder, and unspecified cocaine-induced disorder. Bias recommended A.E. complete intensive inpatient treatment, and he was sentenced to a Drug Offender Sentencing Alternative (DOSA).

---

[1] Urinalysis.

While serving his DOSA sentence, A.E. was under Department of Correction's (DOC) supervision that required him to provide UAs, maintain contact with DOC, complete treatment, and not participate in criminal activity. Shortly thereafter, A.E. was released on furlough for surgery. A.E. did not ultimately undergo surgery, and relapsed. While on furlough, A.E. did not contact DOC to initiate services. In addition, he violated the conditions of his DOC supervision by providing a UA sample positive for methamphetamine and by failing to report.

A.E. was arrested again, in December 2020, for threatening a man with a knife and was charged with disorderly conduct. A.E. was able to continue his previous DOSA sentence, and he was released from jail and admitted into inpatient treatment in February 2021. A.E. completed the 90-day inpatient substance abuse treatment program and was released in April 2021.

The inpatient treatment provider recommended that A.E. participate in outpatient substance abuse treatment and began the process for intake, but A.E. did not schedule an appointment or complete the intake process. A.E. subsequently violated his DOC supervision, and his DOSA was revoked in June 2021. A.E. was then sentenced to 20 months with credit for time previously served and was released in approximately August

No. 38824-7-III
*In re Welfare of D.L.E.*

2021. During A.E.'s time in custody, the Department attempted to provide A.E. with additional services, but the treatment facility did not allow outside providers.[2]

Throughout the dependency, A.E. demonstrated an aversion to UAs and did not provide any random UAs. A.E.'s social worker offered to collect an oral swab in lieu of a UA. In December 2021, an oral swab was taken, and it tested positive for methamphetamine, morphine, oxycodone, THC, and heroin.

2. Termination Trial

A termination trial was held on February 28 and March 1, 2022. Christina Bias, program manager for The Center for Alcohol and Drug Treatment, testified about the substance use disorder assessment for A.E. that she completed in August 2020 as part of his DOSA. She testified that she diagnosed A.E. with severe cannabis, heroin, oxycodone, and methamphetamine substance use disorder. Her recommendation at the time was intensive inpatient treatment followed by outpatient treatment.

Social worker Tony Block testified that A.E. admitted he had a drug issue. Block testified that drug and alcohol services were ordered and provided to A.E. by the Department and that he believed A.E. understood his parental deficiencies and the

---

[2] It does not appear that this was due to COVID-19. Social worker Tony Block stated that ABHS (American Behavioral Health Systems) would not allow outside providers into their facility and he did not think it "had anything to do with Covid; I think that's just their policy." Rep. of Proc. at 76.

services offered to him. Block stated that while A.E. was incarcerated, the Department attempted to but could not provide services to him because most services could not go into the jail. He also testified that though A.E. ultimately completed an inpatient substance abuse program, A.E. did not follow up with outpatient treatment, provide UAs, or complete a psychological evaluation or domestic violence treatment.

Block spoke to A.E. throughout the dependency about the need for substance abuse treatment. Block testified that it was his opinion that all services capable of correcting A.E.'s deficiencies were offered to him. Of the 17 months that Mr. Block was A.E.'s social worker, A.E. was incarcerated for roughly 14 to 15 of them. Block testified that during the few months that A.E. was not incarcerated, A.E. was "absconding from DOC, [and] not contacting me to get anything set up." Block testified that D.L.E.'s foreseeable future was "immediate" and that "he lives in the now." Rep. of Proc. (RP) at 74. Further, Block testified that A.E. did not appear to have the ability to remedy his parental deficiencies within D.L.E.'s foreseeable future, evidenced by his history of substance abuse, instability, and criminal history. Block opined that it would take "at least 12 to 18 more months" for A.E. to remedy his parental deficiencies if he was compliant with substance abuse and domestic violence treatment. RP at 74-75.

Social worker Ana Gonzalez testified that she provided "service letters" outlining access to services to A.E. via mail. Additionally, she said she sent A.E. pictures of the letters via text message to his phone. Ms. Gonzalez also completed service referrals for

A.E. and offered to help him call service providers. Gonzalez testified that she indicated

to A.E. that the Department requested that he complete an additional substance abuse

evaluation and treatment after his positive oral swab in December 2021. Gonzalez

offered to assist A.E. with scheduling an additional substance abuse evaluation, but he

declined her assistance. Gonzalez testified that all services capable of correcting A.E.'s

deficiencies were ordered and offered to him.

Gonzalez testified that D.L.E.'s foreseeable future was days to months. Gonzalez

stated that, based on A.E.'s history and lack of compliance with services, he would not be

able to remedy his parental deficiencies within D.L.E.'s near future. Additionally,

Gonzalez testified that the Department offered A.E. transportation assistance in the form

of gas cards. She also stated that A.E. was offered free rides to access services with a

volunteer driver. Gonzalez testified that A.E. never asked for a bus pass or any other

kind of transportation assistance aside from gas cards.

The court found that D.L.E.'s foreseeable future was days to weeks and, at most,

up to two months. Ultimately, the court found that A.E. was unfit and that termination

was in D.L.E.'s best interests. The court concluded that "[t]he department has proved

element (d) [of RCW 13.34.180(1)] by clear, cogent, and convincing evidence. The

department has offered or provided . . . all services, reasonably [sic] available and

capable of correcting the parental deficiencies in the foreseeable future." Clerk's Papers

(CP) at 190. The court found that the "father's lack of significant participation in the

court ordered services is due to his unwillingness to engage in the services and inability due to substance abuse." CP at 188. Consequently, A.E.'s parental rights were terminated. A.E. appeals.

## ANALYSIS

On appeal, A.E. does not dispute that five of the six statutory elements necessary to terminate his parental rights, RCW 13.34.180(1)(a), (b), (c), (e), and (f), were established at trial. A.E. argues that substantial evidence does not support the finding that element (d) of RCW 13.34.180(1) was proved by clear, cogent, and convincing evidence. RCW 13.34.180(1)(d) requires the Department to offer a parent all necessary, reasonably available services to remedy their parental deficiencies within the child's foreseeable future. Specifically, A.E. contends that the Department failed to offer him: "1) additional assessment to determine the need for long-term residential treatment for substance abuse; 2) housing assistance; and 3) more tailored transportation assistance." Br. Of Appellant at 16.

1.    STANDARD OF REVIEW

An order terminating parental rights must be affirmed if substantial evidence supports the trial court's findings in light of the degree of proof required. *In re Aschauer*, 93 Wn.2d 689, 695, 611 P.2d 1245 (1980). Substantial evidence is evidence in sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise.

*World Wide Video, Inc. v. City of Tukwila*, 117 Wn.2d 382, 387, 816 P.2d 18 (1991). The trial court's decision is entitled to great deference, and its findings of fact must be upheld when supported by substantial evidence. *In re Dependency of K.S.C.*, 137 Wn.2d 918, 925, 976 P.2d 113 (1999). The reviewing court may not weigh the evidence or decide on witness credibility. *In re Dependency of A.V.D.*, 62 Wn. App. 562, 568, 815 P.2d 277 (1991).

A trial court may order that parental rights be terminated if the Department proves the six statutory elements of RCW 13.34.180(1) by clear, cogent, and convincing evidence. RCW 13.34.190. Additionally, the court must find that termination is in the child's best interests and that the parent is currently unfit by a preponderance of the evidence. *In re Dependency of K.M.M.*, 186 Wn.2d 466, 478-79, 379 P.3d 75 (2016). The clear, cogent, and convincing evidence standard is satisfied when the court determines that the ultimate fact at issue is shown to be "highly probable." *K.M.M.*, 186 Wn.2d at 478.

2.    NECESSARY SERVICES—RCW 13.34.180(1)(D)

This court recognizes substantial rights at stake in cases such as these. "The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State." *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). Parents have a fundamental liberty

interest in the custody and care of their children, and the Department may terminate

parental rights "'only for the most powerful [of] reasons.'" *In re Welfare of S.J.*, 162

Wn. App. 873, 880, 256 P.3d 470 (2011) (alteration in original) (internal quotation marks

omitted) (quoting *In re Welfare of A.J.R.*, 78 Wn. App. 222, 229, 896 P.2d 1298 (1995)).

To terminate parental rights, the court considers whether the parent or parents are

fit.  In order for the Department to meet its burden of proving that the parents are unfit,

the Department must satisfy the six elements of RCW 13.34.180(1).  At issue here is

RCW 13.34.180(1)(d), which states that the Department must show that "services ordered

under RCW 13.34.136 have been expressly and understandably offered or provided and

all necessary services, reasonably available, capable of correcting the parental

deficiencies within the foreseeable future have been expressly and understandably offered

or provided."  The term "necessary services" is defined as "those services 'needed to

address a condition that precludes reunification of the parent and child.'" *K.M.M.*, 186

Wn.2d at 480 (quoting *In re Dependency of A.M.M.*, 182 Wn. App. 776, 793, 332 P.3d

500 (2014)).  In other words, the Department must show that it provided all court-ordered

and necessary services capable of correcting A.E.'s parental deficiencies within the

foreseeable future of the child.

The Department must identify a parent's specific needs and tailor its services to

meet those needs.  *In re Parental Rights of D.H.*, 195 Wn.2d 710, 727, 464 P.3d 215

(2020) (citing *In re Parental Rights of I.M.-M.*, 196 Wn. App. 914, 921, 385 P.3d 268

(2016)); *see also In re Welfare of S.J.*, 162 Wn. App.at 881 (citing *In re Dependency of T.R.*, 108 Wn. App. 149, 161, 29 P.3d 1275 (2001)).  Even when the underlying cause of a parental deficiency cannot be remedied, the trial court must determine whether services were offered to remedy the deficiency and whether the deficiency can be remedied in the future.  *In re Welfare of A.B.*, 181 Wn. App. 45, 323 P.3d 1062 (2014).

A parent's persistent refusal to participate in a service can satisfy the Department's obligation under RCW 13.34.180(1)(d).  *In re Welfare of M.R.H.*, 145 Wn. App. 10, 26, 188 P.3d 510 (2008).  The Department has offered all reasonable services when the record establishes that the further offer of services would be futile.  *K.M.M.*, 186 Wn.2d at 483.  The provision of services is futile when a parent is unwilling or unable to benefit from an offered service within a foreseeable time.  *Id.*

Here, A.E.'s primary deficiency was "his current and chronic chemical dependency issues."  CP at 187.  His secondary parental deficiencies included a lack of parenting skills, a lack of safe housing, untreated mental health issues, and domestic violence.  The court found that D.L.E.'s foreseeable future was "just days to weeks, up to two months at most."

*Additional Substance Abuse Assessment*

A.E. argues that an additional assessment to determine the need for long-term residential treatment for substance abuse was a necessary service that the Department should have, but did not offer or provide to him.  Social worker Tony Block testified that

10

though A.E. ultimately completed a 90-day inpatient substance abuse program as part of his DOSA, A.E. did not follow up with outpatient substance abuse treatment or provide UAs. Consequently, A.E.'s DOSA was revoked in June 2021, and he was sentenced to twenty months with credit for time served. A.E. was released sometime around August 2021. Mr. Block stated that he spoke to A.E. throughout the dependency about the need for substance abuse treatment, but A.E.'s compliance with services was sorely lacking.

In December 2021, after A.E. provided an oral swab that tested positive for methamphetamine, morphine, oxycodone, THC, and heroin, Social Worker Ana Gonzalez testified that she offered to help A.E. call a treatment provider to set up a new substance abuse assessment to begin treatment. Though Gonzalez told A.E. that the Department requested that he complete an additional substance abuse evaluation and treatment, A.E. declined her assistance. Gonzalez also completed service referrals for A.E. and offered to help A.E. call service providers. Still, A.E. remained non-compliant with court-ordered substance abuse treatment.

There is no evidence in the record that indicates that A.E. was not offered additional substance abuse treatment. Instead, A.E. was given two opportunities for inpatient treatment through his DOSA. After completing the inpatient treatment, A.E.'s DOSA was revoked when he failed to participate in the outpatient treatment portion of the program. Nevertheless, after his release from incarceration and positive oral swab, his social worker, Gonzalez, offered to help A.E. call a treatment provider and set up a

11

new assessment, which A.E. declined. The superior court found that A.E.'s lack of attendance at substance abuse treatment "was due to his unwillingness to attend these services." CP at 184. Further offers of services would be futile. Consequently, A.E.'s claim that the Department did not offer him enough substance abuse treatment fails.

*Housing Assistance*

For the first time on appeal, A.E. argues that housing assistance was a necessary service because it would have assisted him with accessing services and maintaining his sobriety. Further, A.E. argues that his lack of stable housing was "repeatedly" cited as a reason for terminating his parental rights. As stated previously, A.E.'s primary deficiency was his past and present substance abuse issue, the record reflects as much. Nothing in the record supports A.E.'s claim that housing assistance would have aided him in remedying his pattern of substance abuse.

Housing assistance is generally not a remedial service for a parent during a dependency. *In re Dependency of Z.M.Y.*, No. 37674-5-III (Wash. Ct. App. June 15, 2021) (unpublished), https://courts.wa.gov/opinions/pdf/376745_unp.pdf. Remedial services are available in a dependency action which facilitate the reunification of the parent and child in a safe and timely manner. RCW 13.34.025(2)(a). The definition of "remedial services" does not include "housing assistance." RCW 13.34.030(15). In fact, RCW 13.34.030(15) states that: "For purposes of this chapter, 'housing assistance' is not a remedial service or family reunification service as described in RCW 13.34.025(2)."

12

However, if homelessness is a primary factor preventing reunification, the court may order that some form of housing assistance be provided. *Washington State Coal. for the Homeless v. Dep't of Soc. & Health Servs.*, 133 Wn.2d 894, 901, 949 P.2d 1291 (1997).

Here, it is clear from the record and the court's findings that A.E.'s primary deficiency preventing reunification with D.L.E. was his substance abuse issues, not his lack of stable housing. Though A.E. contends that his lack of stable housing was "repeatedly" cited as an aspect of the case termination, there is no support for this in the record. Though unstable housing was identified as one of A.E.'s parental deficiencies, at the termination trial A.E.'s social workers consistently testified that A.E.'s substance abuse issues and lack of participation in services were primarily what had prevented him from being reunited with D.L.E. The trial court's findings of fact and conclusions of law reflected this testimony. There is no evidence in the record that providing A.E. with housing assistance would have remedied his substance abuse issues, its only an argumentative assertion.

*Tailored Transportation Assistance*

A.E. argues that more tailored transportation assistance was a necessary service that was not provided to him. There is no support for this contention in the record.

It is undisputed that the Department offered A.E. gas cards. Ms. Gonzalez stated that A.E. never asked for any transportation assistance but picked up gas cards. Further, Ms. Gonzalez testified that a volunteer driver could sometimes provide A.E. with

No. 38824-7-III
*In re Welfare of D.L.E.*

transportation. A.E. also testified that someone was giving him rides to access services for a period of time. There is no evidence to support the contention that more transportation assistance would have remedied A.E.'s parental deficiencies in the near future.

Given these facts, substantial evidence supports the trial court's conclusion that the Department proved, by clear, cogent, and convincing evidence that it offered A.E. all services necessary, reasonably available, and capable of correcting his parental deficiencies in the foreseeable future.

We Affirm.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Lawrence-Berrey, A.C.J.

_____
Pennell, J.

14