[No. 4561–II.   Division Two.   July 2, 1981.]

*In the Matter of the Welfare of*
JASON J. HENDERSON.

*Ronald D. Ness,* for appellant.

*C. Danny Clem, Prosecuting Attorney,* and *Patricia Schafer* and *Linda Krese, Deputies,* for respondent.

PEARSON, J.—Elaine Henderson appeals an order terminating her parental rights to her son, Jason Henderson. The issues on appeal relate to whether the trial court erred by not making a determination at the time of trial of Jason's status as a "dependent child," and by admitting certain documentary and testimonial evidence during trial. We find no error, and accordingly affirm.

This matter was brought on for trial in November 1979 upon a petition to terminate the parent–child relationship between Jason Henderson, a minor, and his mother. Prior to this hearing, an order had been entered in July 1977 declaring Jason to be a "dependent child" under RCW 13.04.010, based on a Petition of Dependency filed in March 1977. The trial court accepted this declaration of dependency as valid for purposes of the present termination petition, and at the conclusion of the trial ordered the parent–child relationship terminated. From this determina-

tion Mrs. Henderson appeals.

Under former RCW 13.04.010, a "dependent child" was, among other things, one "[w]ho has no parent . . . *willing to exercise, or capable of exercising,* proper parental control". (Italics ours.) This section of the definition was amended effective June 7, 1979, to provide that a dependent child is one "[w]ho has no parent . . . *willing and capable* of adequately caring for the child . . ." (Italics ours.) RCW 13.34.030(2)(c). Mrs. Henderson argues that this change in statutory language, which took place subsequent to the 1977 order establishing dependency, required that the court make a new determination of Jason's status as a dependent child at the time of trial. We disagree, and hold that the court did not err by refusing to make such a determination anew.

■ ■ The language of a statute must be read in context with the entire statute and construed in a manner consistent with its general purpose. *Graham v. State Bar Ass'n,* 86 Wn.2d 624, 548 P.2d 310 (1976). The purpose behind the statute defining dependency is to allow a court to assert protective custody over a child (*see generally* RCW 13.34) and to terminate all parental rights if it would serve the best interests of the child. RCW 13.34.190(2).

An order terminating parental rights can be entered only where the court finds that the child has been "removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency under *RCW 13.34.030(2)*". (Italics ours.) RCW 13.34.180(3). Because of this requirement, a literal reading of this statute would prevent parental rights from being terminated in any case where the initial dependency determination, as here, was made under the former definition contained in RCW 13.04-.010. Such an interpretation would thwart the legislative intent to have courts act in the best interests of the child, and accordingly we reject such an interpretation. *See Hatfield v. Greco,* 87 Wn.2d 780, 557 P.2d 340 (1976). Here the change in language is not so significant as to invalidate a dependency determination made under the prior definition.

■ Additionally, we note that, following the original order establishing dependency in 1977, the court continued Jason's wardship by orders entered September 11, 1978, April 9, 1979, and October 23, 1979. *See* former RCW 13.04.010; RCW 13.34.050 and 13.34.060. The power of the court to provide for continued temporary wardship of a child is coexistent with a continuation of a status of dependency. *In re Walker,* 43 Wn.2d 710, 263 P.2d 956 (1953). Therefore, we interpret the October 1979 order continuing wardship as an implicit finding of dependency under RCW 13.34.030, which took effect in June of that year. Under this alternative analysis, there again would have been no need for the court to redetermine Jason's status as a dependent child at the time of trial.

At the beginning of trial, the judge ruled that under RCW 13.34.110 he would not admit any part of Mrs. Henderson's social file except as otherwise admissible under the rules of evidence. During trial and over her repeated hearsay objections, the court admitted into evidence some correspondence and status reports contained in this social file. The court also permitted Kathleen Weigel and Judith Borcherding, the two Department of Social and Health Services case workers primarily involved in Jason's case, to testify about conversations they had with other social and health care workers. Henderson assigns error to the admission of this evidence. We hold that the admission was not error.

■ RCW 13.34.110 provides that during a court's fact–finding hearing on a termination petition, "[n]o social file or social study may be considered by the court . . . except as otherwise admissible under the rules of evidence." In nonjury cases, liberal admission of evidence is ordinarily encouraged, and where a court perceives the distinction between admissible and inadmissible purposes for which evidence is offered, and rules accordingly, there is no error in its admission. *In re Noble,* 15 Wn. App. 51, 547 P.2d 880 (1976); *Selah v. Waldbauer,* 11 Wn. App. 749, 525 P.2d 262 (1974). Here the trial judge made clear that he was not

admitting the written documents and challenged oral testimony as proof of the contents thereof (hearsay under ER 801), but rather as evidence relevant to determining what was done by the various social agencies that worked with Mrs. Henderson, and whether the State provided all necessary services it should reasonably have offered her. This finding with respect to whether proper social services have been provided the parent is one the court was required to make under RCW 13.34.180(4) and RCW 13.34.190. Thus the evidence was properly admitted for that purpose.

During trial, the court also admitted the testimony of two clinical psychologists who had previously examined Mrs. Henderson. Dr. J. William Louy examined her on three occasions in 1979. Two examinations were conducted at the request and expense of the State Department of Vocational Rehabilitation (DVR) for the specific purpose of providing DVR with evaluation reports on Mrs. Henderson's fitness as a mother. The third examination was done at the request of Kitsap County Judge Maddock and Dr. Louy provided the court with a report of his findings. Dr. Stella J. Sallee examined Mrs. Henderson in September 1979 at the specific request of the Juvenile Division of the Kitsap County Superior Court, and likewise provided the court with a report of her findings. Mrs. Henderson objected to the admission of their testimony at trial on the basis of the psychologist–client privilege, RCW 18.83.110, and assigns error to the court's ruling on appeal.

RCW 18.83.110 makes the confidential communications between a client and a psychologist privileged against compulsory disclosure to the same extent and subject to the same conditions as confidential communications between an attorney and a client. This statutory privilege is a procedural safeguard which derogates from the common law and is therefore strictly construed. See *Department of Social & Health Servs. v. Latta,* 92 Wn.2d 812, 601 P.2d 520 (1979). It does not apply in situations where it is manifest that the patient did not intend her communications to be confidential. See 5 R. Meisenholder, Wash. Prac. § 202, at 193

(1965). Its ultimate application requires a balancing of the benefits of the privilege against the public interest of a full revelation of all the facts. *Dike v. Dike,* 75 Wn.2d 1, 448 P.2d 490 (1968).

Applying these principles to the facts of this case, we hold that the trial court did not err by permitting the psychologists to testify. Under the circumstances of Mrs. Henderson's examinations, she could not have reasonably expected that her communications with the doctors would be kept confidential. In each case, the examinations were performed for the specific purpose of providing some third party with the results thereof. Mrs. Henderson was undoubtedly aware of this purpose before the examinations took place. The trial court's interest in making an informed decision about Jason's future outweighed any legitimate purpose that would have been served by suppressing the testimony, and it properly admitted the evidence.

We affirm.

REED, C.J., and PETRIE, J., concur.