[No. 8013–3–II.   Division Two.   October 22, 1985.]

*In the Matter of the Welfare of*
VALERIE A. SIEGFRIED.

*Steven B. Dixon* and *Crawford, McGilliard, Peterson & Yelish,* for Edna Siegfried (appointed counsel for appeal).

*Herbert D. Austad,* for John Siegfried.

*David Wecker,* as guardian ad litem.

*Kenneth O. Eikenberry, Attorney General, Donna R. Fisher, Assistant, C. Danny Clem, Prosecuting Attorney,* and *Gregg E. Johnsen, Deputy,* for Department of Social and Health Services.

PETRICH, J.—Edna Siegfried appeals a trial court order terminating her parental relationship with her 8-year-old daughter, Valerie Siegfried. Two issues are presented for review: (1) whether the mother waived the psychologist–patient privilege by entering into an arrangement with a Child Protective Services caseworker, whereby the mother, who was then seeking assistance to improve her parental skills to avoid a threatened loss of custody of the child, would attend counseling sessions with a psychologist, who would communicate to the caseworker the observations resulting from the sessions and the mother's progress or lack thereof in mastering parental skills; and (2) whether clear, cogent, and convincing evidence supported the order terminating parental rights. We find no error in admission of the testimony of the psychologist because there was a waiver of the psychologist–patient privilege, and, after a review of the record, we affirm the termination order.

The evidence reflects a sordid account of repeated acts of physical abuse of Valerie by her mother from the time the child was an infant. Valerie, when only 10 months of age, was removed from the family home in Florida because she was seriously injured. Mrs. Siegfried pleaded guilty in 1978 to a charge of aggravated child abuse in Florida based on these injuries. Valerie was sent to live with her aunt in Washington. The parents followed and sought physical custody of the child through the Child Protective Services (CPS) of the Department of Social and Health Services. Sometime in 1980 Valerie returned to her parents' home, and eventually the case was closed. In April of 1981, the case was reopened by Tim Abbey, a caseworker for CPS, when Mrs. Siegfried acknowledged inflicting further injuries on Valerie. Abbey and Mrs. Siegfried formulated a case plan which provided: (1) the child would reside with its paternal grandparents; (2) CPS would monitor the case; (3) Mrs. Siegfried would seek counseling with Dr. Diane

O'Leary, a licensed psychologist; and (4) the decision on whether Valerie would be returned would be based in part on Dr. O'Leary's ongoing evaluation and recommendation.

Shortly thereafter, Valerie was returned home where she suffered further injuries. In April of 1982, following reports of child abuse, dependency proceedings were initiated.[1] Valerie was placed with the father and Mrs. Siegfried was permitted to have supervised visitation privileges. At this time the mother resumed with Dr. O'Leary the counseling sessions which she had earlier abandoned, until commitment to Purdy Treatment Center in September of 1982.[2] When the father violated conditions of physical custody, Valerie was then placed in a series of foster homes, each successive home declining any long–term placement because of the bizarre and disruptive conduct of the child. Eventually she was placed in a Bellingham Residential Treatment Center where she remained at the time of trial.

At the residential treatment center, Valerie was diagnosed as exhibiting a conduct disorder secondary to physical and sexual abuse. There was evidence from her therapist at the center that contact with her parents would be very detrimental to Valerie's potential recovery. The center plans to locate and help Valerie integrate into an adoptive home after a period of intensive treatment over at least the next 2 years.

While she has been at Purdy, Mrs. Siegfried has taken classes in family relationships, parental skills, and child development. Her counselor at Purdy testified that Mrs. Siegfried is self–motivated and conscientious in taking advantage of services and opportunities available. A psychologist at Purdy testified that Mrs. Siegfried is highly motivated to take steps to change. Dr. O'Leary, over objec-

---

[1] On March 16, 1983, the child was found to be a dependent child and this determination has not been challenged.

[2] Although the State in its brief contends the commitment stemmed from the mother's abuse of the child, the record is inconclusive as to why the mother was incarcerated.

tion, described Mrs. Siegfried's lack of progress during therapy, her resistance to change, and her lack of candor. The order terminating parental rights was issued on July 5, 1984.

■ Mrs. Siegfried first argues that Dr. O'Leary's testimony was protected by the psychologist–client privilege and should not have been admitted over her objection. Under RCW 18.83.110, confidential communications between psychologist and client are privileged to the same extent, and are subject to the same conditions, as are confidential communications between attorney and client.[3] Because the psychologist–client privilege protects only confidential communications, the privilege will apply only if the client has a reasonable expectation that the communications are to be kept confidential. *In re Henderson,* 29 Wn. App. 748, 630 P.2d 944 (1981). In *Henderson,* the court concluded that the mother had no reasonable expectation of confidentiality in relationships with two psychologists since she had submitted to psychological evaluations at the request of the court and the Department of Vocational Rehabilitation.

Mrs. Siegfried argues that she did not waive the privilege, as had the mother in *Henderson,* because she sought treatment with Dr. O'Leary on her own for the purpose of helping her to change her behavior, not for court or agency

---

[3]RCW 26.44.030 and RCW 26.44.040 require psychologists to report to the proper authorities incidents of child abuse as well as information helpful to identify the cause of injury and the perpetrator. Confidential communications which fall within this child abuse reporting exception are excluded from protection under the psychologist–client privilege. *State v. Fagalde,* 85 Wn.2d 730, 539 P.2d 86 (1975). We decline to allow admission of Dr. O'Leary's testimony, which related to treatment progress and prognosis, under this child abuse reporting exception, because the testimony related to far more than the identity of the perpetrator and cause of injury. To admit a broad range of testimony on the basis of this exception could subvert the legislative intent to protect confidential communications and might deter clients from seeking treatment for problems related to child rearing. *See State v. Sullivan,* 60 Wn.2d 214, 225, 373 P.2d 474 (1962); Comment, *The Psychotherapist–Patient Privilege in Washington: Extending the Privilege to Community Mental Health Centers,* 58 Wash. L. Rev. 565, 566–72 (1982–1983).

purposes. However, the record shows that a significant motivation for Mrs. Siegfried to see Dr. O'Leary was to satisfy CPS that Valerie could return to and continue to live in the home. Dr. O'Leary and Abbey understood from separate agreements with Mrs. Siegfried and from their discussions with each other that Valerie would return to the home, provided that Mrs. Siegfried would see Dr. O'Leary. Although Mrs. Siegfried's only recollection of the agreement was about some contact between Abbey and Dr. O'Leary over the telephone, she did admit meeting with Abbey on April 16, 1981. She first visited Dr. O'Leary a week later, and Valerie returned to the home 3 weeks after this first visit. Such circumstances corroborating the testimony of Abbey and Dr. O'Leary indicate that Mrs. Siegfried did agree to the ongoing communication between Abbey and Dr. O'Leary. She therefore waived the privilege with respect to her parental relationship with Valerie.[4]

Mrs. Siegfried next argues that the State presented insufficient evidence under the statutory criteria of RCW 13.34.180 to permit termination of her parental relationship with Valerie. The proof required to support an order terminating parental rights is clear, cogent, and convincing evidence which shows facts supporting the order to be highly probable. *In re Sego*, 82 Wn.2d 736, 513 P.2d 831 (1973). The appellate court determines whether the quantum of proof exists to support the trial court findings and

---

[4]We decline to follow the dicta in *Henderson*, 29 Wn. App. at 753, which appears to authorize the court, on a case-by-case basis, to balance the benefits of the privilege against the public interest in full disclosure when deciding whether confidentiality should be respected. Such a balance may be appropriate in considering whether an exception to the rule of confidentiality is appropriate. *Dike v. Dike*, 75 Wn.2d 1, 11, 448 P.2d 490 (1968). In view of the court's conclusion in *Henderson* that there was no reasonable expectation of confidentiality in the relationship, the discussion of the balancing process was unnecessary.

Because we have found that, for the purposes of this termination proceeding, Mrs. Siegfried waived the privilege as it related to her ability to interact properly with Valerie, we do not reach the question of whether her requests for letters from Dr. O'Leary to persons involved with her criminal prosecution and ultimate confinement at the Purdy Treatment Center waived the privilege in an arguably unrelated parental termination proceeding, as argued by the State.

order. *In re Sego, supra.* The trial court has broad discretion to evaluate the evidence in light of the best interests of the child. *In re Schulz,* 17 Wn. App. 134, 561 P.2d 1122 (1977).

An order of permanent termination of the parent–child relationship under RCW 13.34.180 may be entered when each of six elements is established and when termination is in the best interests of the child. *In re Esgate,* 99 Wn.2d 210, 660 P.2d 758 (1983). Three of the elements under RCW 13.34.180 are at issue here.

■ Mrs. Siegfried contends that the State failed to present evidence to support RCW 13.34.180(4), which requires a finding that the State provided all reasonable and necessary services to correct parental deficiencies within the foreseeable future. Mrs. Siegfried asserts that the State had not permitted her to visit Valerie for nearly 2 years prior to the termination proceeding. In addition, the State formulated no plan to resume visitation. Therefore, she contends that the State has failed to provide the opportunity for proper development of a positive parent–child relationship. Under *In re Hall,* 99 Wn.2d 842, 664 P.2d 1245 (1983), however, the State is responsible to provide services that will correct parental deficiencies within the foreseeable future. Here, the State did provide CPS follow–up and homemaker services and Dr. O'Leary treated Mrs. Siegfried prior to her incarceration. Moreover, at the time visitation ceased, Valerie was a severely injured child. The record shows that interaction between Mrs. Siegfried and Valerie would have been detrimental in light of Valerie's emotional condition. It was reasonable to deny visitation based on Valerie's best interests. There was, therefore, sufficient evidence to support the finding that all reasonable services had been offered.

■ Mrs. Siegfried next contends that, because she had remedied the difficulties that led to Valerie's dependency, the evidence failed to establish, under RCW 13.34.180(5), that "there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the

near future". Mrs. Siegfried asserts that she has demonstrated motivation while at Purdy to become a loving and protecting parent for Valerie. She has accepted counseling, has taken all classed offered at Purdy, and has promised to live in a supportive environment when she leaves Purdy. However, the evidence also shows that Mrs. Siegfried continued to abuse Valerie in the past during the time she was undergoing treatment with Dr. O'Leary. In addition, Valerie is now a severely disturbed child. While Mrs. Siegfried's efforts to change and avail herself of opportunities at Purdy are commendable, the trial court determined that she lacked the parental skills required for such a seriously disturbed child as Valerie. As the court pointed out in *Esgate,* 99 Wn.2d at 214, a child with severe disabilities would require parental skills far beyond the abilities of most normal parents, let alone one with emotional problems. We are satisfied that there is sufficient evidence to support the finding that there is little likelihood that conditions which led to the dependency will be remedied in the near future.

Because Valerie's current placement in the residential treatment facility is not permanent, Mrs. Siegfried contends that the State failed to produce evidence supporting a finding under RCW 13.34.180(6), "[t]hat continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home". The facility is, however, a stable home for Valerie for the next few years, a long time in the life of a young child. In *Esgate,* 99 Wn.2d at 214, where the court found that even a foster home was a permanent and stable home under RCW 13.34.180(6), the court stressed the importance of trying to achieve security and stability for the child. Here, the record shows that current interaction with her mother would likely delay any progress Valerie may make toward becoming emotionally stable enough to be placed successfully into an adoptive home. Because Valerie's current placement will last for an extended period of time, with the long–range goal of gradually integrating and

supporting Valerie's eventual adoption, without interference and setbacks due to her mother's involvement, the court's finding was supported by sufficient evidence.

We conclude that the trial court did not err in allowing Dr. O'Leary's testimony because Mrs. Siegfried waived the psychologist–patient privilege in regard to her parental relationship with Valerie. Further, we conclude that there is substantial evidence to support the findings of the trial court and that there is the requisite clear, cogent and convincing evidence to support the order of deprivation of parental rights.

We affirm.

WORSWICK, C.J., and ALEXANDER, J., concur.

After modification, further reconsideration denied November 27, 1985.