IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

|  |  |  |
|---|---|---|
| IN RE PARENTAL RIGHTS TO | ) ) ) ) | No. 35228-5-III |
| P.L.F. | ) ) ) ) | UNPUBLISHED OPINION |

FEARING, C.J. — Nina Sargent appeals from the termination of parental rights to her three-year-old son. We affirm the termination.

## FACTS

This appeal concerns parental rights to the child, Patrick Ferris, whose parents are Nina Sargent and Bartholomew Ferris, a Walla Walla couple. Only the mother challenges the trial court's termination of parental rights. Nina Sargent also bore three other older children, Alexis and Paul Sargent and Allison Aguirre. All names are pseudonyms.

The facts begin before Patrick Ferris' birth. Due to domestic violence and Nina Sargent's use of methamphetamine, the Washington Department of Social and Health Services (DSHS) placed Alexis in foster care, on March 28, 2013, and filed a dependency petition as to Alexis. DSHS also placed Paul and Allison in the care of their biological

father. From April through September 2013, Sargent and Bartholomew Ferris

participated in drug treatment, family and individual counseling, and Family Treatment

Court (FTC). Sargent then complied with drug treatment obligations. As a result, Alexis

returned to her parents' care on November 13, 2013 with the condition that each parent

continue with services. Within a week, Paul and Allision also returned to Sargent's care.

On December 27, 2013, Nina Sargent bore Patrick Ferris. Through February 1,

2014, Sargent complied with FTC rules and delivered clean urinalysis (UA) results.

Nevertheless, in early 2014, father Bartholomew Ferris violated court rules and tested

positive for marijuana.

Unfortunately, at some date between February and April 2014, Nina Sargent

relapsed with methamphetamine use. Between February and August 2014, law

enforcement responded to six domestic violence calls at the Sargent-Ferris home. In July

2014, the FTC discharged the parents from court participation due to continued domestic

violence.

On September 15, 2014 violence erupted again between Nina Sargent and

Bartholomew Ferris. Ferris threw a high chair. The wheel of the high chair scraped

Alexis' foot and left a mark. Patrick, then nine months old, suffered mild injuries from

either the chair or some other force source.

In October 2014, DSHS removed all four children from the custody of Nina

Sargent and Bartholomew Ferris. Reasons for the removal included the parents' drug

2

use, violence between Sargent and Bartholomew, a chaotic and unstable home, poor use of financial resources resulting in the children's hunger, and mental health concerns about Sargent.

On November 24, 2014, the trial court entered a dependency for Patrick Ferris. Patrick Ferris' dependency order required Nina Sargent to: (1) participate in random urinalysis testing, (2) not associate with persons who abuse unlawful substances and who do not support a recovery lifestyle, (3) implement a recovery and relapse prevention plan developed during her drug treatment, (4) obtain and maintain employment, (5) participate in weekly counseling with Comprehensive Mental Health Services to address anxiety and depression, (6) complete domestic violence treatment with Stan Woody, and (7) meet with DSHS social worker Janel Torrescano a minimum of once a month. DSHS provided Sargent gas money to travel from Walla Walla to the Tri-Cities to obtain domestic violence treatment from Stan Woody.

Nina Sargent submitted to counseling from Alyssa Richards at Comprehensive Mental Health Services in Walla Walla from October 2014 until the parental rights termination trial in early 2017. Richards provided counseling sessions twice a month to address Sargent's anxiety, depression, and posttraumatic stress disorder. Richards' schedule did not permit the weekly sessions required in Patrick's dependency order.

Nina Sargent made little progress in drug treatment through the summer of 2015. During this time, Sargent participated in group community support meetings but failed to

complete homework. Nevertheless, Sargent passed methamphetamine urinalyses. She tested positive for oxycodone use, but informed her social worker that she needed the opioid for pain. Through the summer of 2015, Sargent participated in Early Head Start classes. She acted appropriately during visitation with her children.

Nina Sargent ended her relationship with Bartholomew Ferris in the summer of 2015. Sargent last saw Ferris at a yard sale in August 2015.

Beginning in July 2015, Nina Sargent decreased her participation in court-ordered services. Sargent missed visits with her children and skipped appointments with Serenity Point, the drug treatment center. Sargent ceased attending domestic violence counseling and missed a urinalysis. Sargent explained to social worker Janel Torrescano that she suffered stress and anxiety resulting from work and attending domestic violence treatment an hour away in the Tri-Cities. Torrescano offered to drive Sargent to the treatment appointments if Sargent's vehicle was inoperable. In January 2016, Stan Woody terminated Sargent's domestic violence treatment because of her many absences.

The trial to terminate Nina Sargent's parental rights to daughter Alexis began in October 2015 and finished in February 2016. The trial court terminated Sargent's rights to Alexis. The dependency for Patrick Ferris continued thereafter. On February 29, 2016, Sargent tested positive for methamphetamine.

Between March and April 2016, Nina Sargent completed a 21-day inpatient detoxification program at Sundown M Ranch treatment center in Yakima. After finishing

inpatient treatment, Sargent underwent intensive outpatient treatment three days a week for three hours per day at Serenity Point Counseling Services in Walla Walla. After graduating from intensive outpatient treatment on July 5, 2016, she commenced a traditional outpatient treatment program, by attending weekly group sessions and individual sessions one to three times a month. Serenity Point counselors noticed improvement in Sargent's condition. Sargent assumed responsibility for her own actions and talked positively. She successfully completed urinalyses.

Nina Sargent also reengaged in mental health services from Alyssa Richards at Walla Walla's Comprehensive Mental Health Services. Richards then described Sargent as motivated and determined. Yet, Richards could only meet with Sargent twice a month. DSHS social worker Janel Torrescano expressed concern about the infrequent meetings and recommended that Sargent attend weekly sessions with a different therapist with more availability. Sargent rejected the recommendation. Torrescano also offered Sargent another counselor with experience in concurrent treatment of drug addiction and mental health issues. Sargent again refused the offer.

Nina Sargent resumed domestic violence counseling with Stan Woody and attended forty-two group counseling sessions. According to Woody, completing forty-two sessions exhibited persistence. Woody also found that Sargent understood accepting responsibility for her conduct, an understanding crucial to success. By August 2016, Sargent's condition had improved, but the living situation of children Paul Sargent and

Allison Aguirre had deteriorated. After temporary placement of the two older children elsewhere, DSHS returned the children to Sargent on a temporary basis. After a brief trial period, Sargent demonstrated she could work, participate in services, and care for the two children, so DSHS reunified Paul and Allison with Sargent in September 2016 on a permanent placement.

In October 2016, Nina Sargent's life declined again. Janel Torrescano observed that Sargent could not "function." Report of Proceedings (RP) at 280. Sargent's drug treatment counselor, Andrea Dressler at Serenity Point, worried about Sargent's behavior in part due to Sargent's use of hydrocodone and muscle relaxants for back pain. Sargent missed visits with son Patrick Ferris, stopped attending domestic violence counseling, ceased attending drug treatment sessions, and ended urinalyses.

Counselor Alyssa Richards observed a decline in Nina Sargent's attitude that Richards attributed to the pending termination trial for Patrick Ferris and the loss of parental rights to Alexis Sargent. Richards noticed Sargent slept excessively, suffered fatigue and lethargy, and sat on a couch instead of participating in services. Richards recommended a mentally ill chemical abusers program that, as one previously offered to Sargent, provided concurrent treatment for mental illness and substance abuse. Unfortunately, Sargent could not access the concurrent treatment until after Patrick's termination trial. In December 2016, Serenity Point discharged Sargent from counseling because of her refusal to engage in treatment. In the same month, Stan Woody dismissed

6

Sargent from group domestic violence treatment because of her absences. Patrick Ferris turned three years old that December.

Due to a deterioration in Nina Sargent's condition, DSHS provided intensive family preservation services in the home. DSHS furnishes family preservation for four weeks in order to prevent removal of children when removal looms imminent. DSHS offered the services to prevent removal of Paul Sargent and Allison Aguirre, who remained in the home of Nina Sargent. Sargent continued to refuse services through January 2017.

PROCEDURE

Trial concerning termination of Nina Sargent's and Bartholomew Ferris' parental rights to Patrick Ferris proceeded in February 2017. The trial court then heard testimony from many expert witnesses concerning the condition and behavior of Sargent.

Patrick Flores, a certified chemical dependency professional at Serenity Point where Nina Sargent attended drug treatment, testified to treatment needed by Sargent. Flores opined that Sargent needs to complete drug treatment in order to parent. The necessary treatment included another round of inpatient drug treatment followed by four to six weeks of out-patient treatment. Flores did not know the length of necessary inpatient treatment, but he noted that a second round of inpatient treatment usually takes longer than the first round.

During trial, service providers testified that Nina Sargent needs cognitive processing therapy to address her anxiety. This therapy needs pairing with addiction therapy, and the combined therapy would last six months. Providers also testified that Sargent needs intensive family therapy, a six to eight-month service.

During trial, DSHS social worker Janel Torrescano averred that Nina Sargent could not remedy her parental deficiencies no matter the length of treatment. Torrescano opined that Sargent cannot "maintain stability for any length of time." RP at 289. Torrescano distinguished Sargent's ability to parent Patrick Ferris from her ability to parent Paul Sargent and Allison Aguirre on the basis of the children's respective ages. Because Paul and Allison were respectively nine and ten years old, Torrescano deemed the two older children capable of microwaving food if needed and approaching neighbors for assistance. Torrescano testified that Nina Sargent's neglect of care would place Patrick at risk.

Margaret Buchan, the court-appointed special advocate for Patrick Ferris, also differentiated the needs of Patrick from his siblings, Paul and Allison, due to age. Patrick's age of three rendered him vulnerable. Buchan concluded that Sargent could not safely parent Patrick.

The trial court terminated the parental rights to Patrick Ferris in both Nina Sargent and Bartholomew Ferris.

LAW AND ANALYSIS

On appeal, Nina Sargent assigns error to the trial court's finding that the State provided all necessary services, that her parental deficiencies could not be remedied in the near future, and that she was an unfit parent. We discern no error.

In a termination of parental rights proceeding, the trial court holds broad discretion to evaluate the evidence in the light of the rights and safety of the child. *In re Welfare of Siegfried*, 42 Wn. App. 21, 27, 708 P.2d 402 (1985). We afford the trial court's decision great deference on review and we uphold the trial court's findings of fact if supported by substantial evidence. *In re Dependency of K.S.C.*, 137 Wn.2d 918, 925, 976 P.2d 113 (1999). Substantial evidence constitutes evidence in sufficient quantity to persuade a fair-minded rational person of the truth of the declared premise. *World Wide Video Inc. v. City of Tukwila*, 117 Wn.2d 382, 387, 816 P.2d 18 (1991). When we review the trial court's findings for substantial evidence, we examine the evidence in a light most favorable to the party that prevailed below. *In re Welfare of A.B.*, 168 Wn.2d 908, 924 n.30, 232 P.3d 1104 (2010). We may not decide the credibility of witnesses or reweigh the evidence. *In re Dependency of A.V.D.*, 62 Wn. App. 562, 568, 815 P.2d 277 (1991).

Termination of parental rights is a two-step process. *In re Welfare of C.B.*, 134 Wn. App. 942, 952, 143 P.3d 846 (2006). First, the State must establish six statutory requirements under RCW 13.34.180(1) by clear, cogent, and convincing evidence. RCW 13.34.190(1)(a)(i). Clear, cogent and convincing means highly probable. *In re Welfare*

*of M.R.H.*, 145 Wn. App. 10, 24, 188 P.3d 510 (2008). Second, the State must show a termination order serves the best interests of the child. RCW 13.34.190(1)(b).

We list all statutory elements before addressing whether the evidence supports discrete elements. Before terminating a person's right to parent his child, the State must prove six parental inadequacy elements:

> (a) That the child has been found to be a dependent child;
> (b) That the court has entered a dispositional order . . .
> (c) That the child has been removed . . . from the custody of the parent for a period of at least six months pursuant to a finding of dependency;
> (d) That the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided;
> (e) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future. . . .
> (f) That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home. If the parent is incarcerated, the court shall consider whether a parent maintains a meaningful role in his or her child's life based on factors identified in RCW 13.34.145(5)(b); whether the department or supervising agency made reasonable efforts as defined in this chapter; and whether particular barriers existed as described in RCW 13.34.145(5)(b) including, but not limited to, delays or barriers experienced in keeping the agency apprised of his or her location and in accessing visitation or other meaningful contact with the child.

RCW 13.34.180(1).

Nina Sargent claims the State failed to demonstrate fulfillment of RCW

13.34.180(1)(d) and (e). In other words, Sargent challenges the trial court's finding of

two of the six statutory elements. She contends that the State of Washington did not offer or provide all reasonably available services and also argues that she can remedy any barriers to reunification in the near future.

Nina Sargent describes her parental deficiencies as stemming from the stress and anxiety resulting from the return of her two older children, maintaining a full-time job, and complying with DSHS ordered services. Sargent further argues her inability to manage stress and anxiety caused her withdrawal from necessary treatment. Since the trial court conditioned parental fitness on the ability to complete treatment, Sargent reasons that the stress and anxiety created a barrier to reunification. In turn, Sargent faults DSHS for failing to afford lengthier family preservation services and dual treatment for mental illness and substance abuse.

RCW 13.34.180(1)(d) demands that, before terminating parental rights, the court find that "all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided." Necessary services are those needed to address a condition that precludes reunification of the parent and child. *In re Parental Rights to K.M.M.*, 186 Wn.2d 466, 480, 379 P.3d 75 (2016). The State's burden in proving it offered all necessary services requires proof that it offered services tailored to each individual's needs. *In re Dependency of T.R.*, 108 Wn. App. 149, 161, 29 P.3d 1275 (2001). The parent must have the opportunity to benefit from all services available to address a barrier to family

11

reunification. *In re Parental Rights to B.P.*, 186 Wn.2d 292, 316, 376 P.3d 350 (2016).

When DSHS offers the services, but the parent fails to take advantage of them, the State

satisfies the requirement of RCW 13.34.180(1)(d). *In re Welfare of M.R.H.*, 145 Wn.

App. at 26 (2008).

The State of Washington introduced evidence that DSHS provided or offered Nina

Sargent all necessary services. DSHS provided mental health counseling, drug

counseling, and domestic violence counseling. Sargent argues DSHS did not afford her

services for anxiety and stress. Nevertheless, after the removal of Patrick Ferris from the

home, Alyssa Richards provided counseling for Sargent's anxiety and stress.

Due to Alyssa Richards' busy schedule, Richards could meet with Nina Sargent

only twice a month. Nevertheless, DSHS twice referred Sargent to a different counselor

that could meet more frequently. Each time Sargent refused the offer for the service she

now alleges as necessary. Offering of services suffices.

Nina Sargent next contends that DSHS failed to provide her dual treatment for

mental illness and substance abuse. Nevertheless, DSHS presented evidence that it

recommended Sargent treat with a dual provider, but Sargent again rejected the

recommendation.

Nina Sargent also argues DSHS should have afforded intensive family

preservation services sooner. In so arguing, Sargent misunderstands the nature of family

preservation services. The service does not send a provider to a home to teach the parent

how to cope with the responsibilities of daily life that includes having a job, children, and maintaining a home. Family preservation services lasts four weeks and is designed to prevent the removal of children when removal appears imminent. Patrick had already been removed from the home. Thus, Sargent does not show family preservation services to be a necessary service or even a viable option.

Nina Sargent cites *In re Parental Rights to B.P.*, 186 Wn.2d 292 (2016) to support her position on appeal. We find *B.P.* inapposite. In *B.P.*, the mother successfully remedied all parental deficiencies, but the State demanded termination of rights on the theory that the child had not attached or bonded with the mother. DSHS failed to provide available attachment services. Nina Sargent has not corrected all of her parental deficiencies despite all the services DSHS offered or provided. Attachment services are irrelevant.

Nina Sargent next contends that the trial court erred by finding that the State proved little likelihood that she can remedy conditions that prevent the return of Patrick Ferris in the near future. A presumption lies that the State fulfills this element of termination if a parent fails to substantially improve deficiencies within twelve months following entry of the dispositional order. *In re Dependency of A.C.*, 123 Wn. App. 244, 249, 98 P.3d 89 (2004). According to court precedent, a determination of what constitutes the near future depends on the age of the child. *In re Welfare of Hall*, 99 Wn.2d 842, 851, 664 P.2d 1245 (1983). One year has been held outside the near future

13

for both a three year old and a six year old. *In re Dependency of A.C.*, 123 Wn. App. at (2004); *In re Dependency of T.R.*, 108 Wn. App. at 164-65 (2001).

Nina Sargent must still complete drug treatment, individual counseling for anxiety, stress, and addiction, and intensive family therapy. According to experts, the therapy, treatment, and counseling would require at least twelve months. Patrick Ferris was three years old at the time of trial. Other testimony established that Sargent could not remedy her parental deficiencies no matter the amount of assistance.

The presumption that Nina Sargent will be unlikely to remedy her deficiencies applies in this case. The trial court found Patrick Ferris dependent on November 24, 2014. Sargent progressed minimally in drug treatment in the winter of 2014-2015. From November 2014 through April 2015, Sargent advanced little in following the court's order regarding treatment and services as a whole. Sargent inconsistently participated in mental health counseling during this period. In January 2016, Stan Woody terminated Sargent from domestic violence treatment because of undue appointment absences. On February 29, 2016, Sargent tested positive for methamphetamine. Thus, by November 24, 2015 and beyond, Sargent failed to substantially improve her parental deficiencies.

Nina Sargent also assigns error to the trial court's ultimate finding that she is currently unfit to parent Patrick Ferris. Once the State proves the initial six statutory elements by clear, cogent, and convincing evidence, the trial court concentrates on whether termination furthers the child's best interests. *In re Dependency of A.M.M.*, 182

14

Wn. App. 776, 784-85, 332 P.3d 500 (2014). The State must prove that termination is in the best interests of the child by a preponderance of the evidence. *In re Dependency of A.M.M.*, 182 Wn. App. at 784-85.

The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State. *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). A parent has a due process right not to have the State terminate his or her relationship with a natural child in the absence of an express or implied finding that, at the time of trial, he or she is unfit to parent the child. *In re Welfare of A.B.*, 168 Wn.2d at 918 (2010). As noted earlier, proof of the six statutory elements of RCW 13.34.180(1) satisfies the due process requirement that a parent be found currently unfit. *In re Dependency of K.N.J.*, 171 Wn.2d 568, 577, 257 P.3d 522 (2011).

The State of Washington proved the six statutory elements. This alone satisfies the due process requirement of finding parental unfitness. In addition, multiple witnesses testified at trial to their concerns regarding Nina Sargent's ability to parent Patrick Ferris. Margaret Buchan and Janel Torrescano both concluded that Sargent could not safely parent Patrick. Sargent's older children could care for themselves to some degree if urgently necessary, but Patrick could not. Patrick would be at risk of neglect if returned

15

No. 35228-5-III
*In re Parental Rights to P.L.F.*

to his mother's care. Given the testimony and evidence presented, the trial court committed no error when finding Sargent unfit to parent Patrick.

Nina Sargent finally assigns error to other findings of fact and conclusions of law. Nevertheless, Sargent fails to argue, brief or support these assignments with citation to authority. This court does not review errors alleged but not argued, briefed, or supported with citation to authority. RAP 10.3; *Valente v. Bailey*, 74 Wn.2d 857, 858, 447 P.2d 589 (1968).

## CONCLUSION

We affirm the trial court's termination of Nina Sargent's parental rights to her son, Patrick Ferris.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, C.J.

WE CONCUR:

_____
Siddoway, J.

_____
Pennell, J.

16